**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO.:  1:24-cv-20805-KMM

YA MON EXPEDITIONS, LLC, BLUEBERRY
ENTERPRISES, LLC, MAGNA CHARTA, LLC,
PRIDE CONTRACTING, INC., KIP LAMAR
SNELL, and JUAN GALAN, Individually and on
Behalf of All Others Similarly Situated,

       Plaintiffs,

vs.

ALLIED MARINE, INC., GALATI YACHT
SALES, LLC, HMY YACHT SALES, INC.,
MARINEMAX, INC., NORTHROP & JOHNSON
YACHTS-SHIPS, LLC, FRASER YACHTS
FLORIDA, INC., FRASER YACHTS
CALIFORNIA CORPORATION, MARINEMAX
EAST, INC., ONEWATER MARINE INC.,
DENISON YACHTS INTERNATIONAL, LLC,
YACHTING ASSETS AND OPERATIONS LLC,
UNITED YACHT SALES, LLC,
INTERNATIONAL YACHT BROKERS
ASSOCIATION, INC., YACHT BROKERS
ASSOCIATION OF AMERICA, INC.,
CALIFORNIA YACHT BROKERS
ASSOCIATION, INC., NORTHWEST YACHT
BROKERS ASSOCIATION, BOATS GROUP,
LLC, PERMIRA ADVISERS LIMITED,
PERMIRA ADVISERS LLC, and YATCO, LLC.

       Defendants.

---

**OMNIBUS MOTION TO DISMISS BY CALIFORNIA YACHT BROKERS**
**ASSOCIATION PURSUANT TO:**

**FED. R. CIV. P. 12(b)(6) FAILURE TO STATE A CLAIM**
**FED. R. CIV. P. 12(b)(7) FAILURE TO JOIN A NECESSARY PARTY**
**FED. R. CIV. P. 12(b)(3) IMPROPER VENUE**

**[Filed Concurrently:  i) Dec. M.P. White; ii) Request Judicial Notice; iii) Exhibits 1-6]**

i

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………… 1

II.     CYBA EXHIBITS…………………………………………………………1

III.    THE ALLEGATIONS OF THE FAC………...…………………………………2

        A. CONCLUSORY FRAMEWORK ALLEGATIONS…………………………2

        B. THE KEY FACTUAL ALLEGATIONS AGAINST

        THE CYBA………………………………………………………………3

IV.     FED. R. CIV. P. 12(b)(6) FAILURE TO STATE A CLAIM…………………………4

    A. THE CYBA HAS INDIRECT IMMUNITY THROUGH STATE ACTION…………5

    B. SHERMAN ACT – 15 U.S.C. § 1……………………………………………..9

        1. SHERMAN ACT § 1 – ELEMENT 1:  FACC FAILS TO PLAUSIBLY

        ALLEGE AN AGREEMENT, COMBINATION, OR CONSPIRACY

        AGAINST THE CYBA……………………………………………………...… 9

            a. CYBA'S SECTION 18 CAN ONLY BE PARRALEL CONDUCT

            SINCE COMMISION SHARING IS LEGAL AND SHARING

            LISTINGS BY DEFINITION OCCURS BEFORE THE OFFER……………9

            b. ALLEGATION CYBA CODE OF ETHICS REQUIRES

            COMMISSION SHARING IS FALSE BASED ON PLAIN

            MEANING AND CANNOT BE THE BASIS OF A

            COMBINATION, CONTRACT, OR CONSPIRACY………………………..10

            c. THE ALLEGATION CYBA CONTROLS ALL THE MLS

            IS CONCLUSORY AND SELF-CONTRADICTED BY THE

            FAC; AND THE ALLEGATION THAT CYBA FOUNDED

            YACHTBROKER.ORG IS FALSE AND EVEN IF TAKEN

            AS TRUE DOES NOT PLAUSIBLY ALLEGE MARKET POWER……….11

            d. THE ALLEGATIONS OF CONSPIRACY BY CYBA

            FOSTERING VIA A CONFLICT OF INTEREST MAKES NO

            SENSE SINCE DUAL FIDUCIAL DUTIES ARE MANDATED

            BY CALIFORNIA AND THE DBW……………………………………12

        2. SHERMAN ACT § 1 – ELEMENT 2:  PLAINTIFF FAILS TO

ALLEGE AN UNREASONABLE RESTRAINT ON TRADE

BY THE CYBA………………………………………………………………..13

    a.  THE FAC FAILS TO ALLEGE PLAUSIBLE ANTI-

        COMPETITIVE EFFECT NOR A PRICE INCREASE

        IN BROKER COMMISSIONS…………………………………………14

    b.  PROCOMPETITIVE EFFECT:  PROTECTING BUYERS

        AND MARKET……………………………………………………………16

V.    FED. R. CIV. P. 12(b)(7) FAILURE TO JOIN A NECESSARY PARTY………...… 16

VI.    FED. R. CIV. P. 12(b)(3) IMPROPER VENUE:  THE CYBA DOES

NOT DO "SUBSTANTIAL BUSINESS" IN THE SOUTHERN

DISTRICT OF FLORIDA………………………………………………………………18

VII.    CONCLUSION…………………………………………………………………..20

iii

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) …………….…………….…..…………………………….2

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).………………….………………  4, 9, 10

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
509 U.S. 209, 113 S.Ct. 2578, 2587 (1993). ……………………….…………………………15

*Business Elecs. Corp. v. Sharp Elecs. Corp.,*
485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988) ……………….…………………………13

*California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,*
445 U.S. 97, 105 (1980)……………………………….…………………………………….5, 6, 8

*Continental T.V., Inc. v. GTE Sylvania, Inc.,*
433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977) ……………..………….…………………… 13

*Davidson v. Capital One Bank (USA) N.A.,*
797 F.3d 1309 (11th Cir. 2015).………………………………………….…….………………….4

*Focus on the Family v. Pinellas Suncoast Transit Auth.,*
344 F.3d 1263, 1279 (11th Cir. 2003)………………………………………….………………. 16

*Gold Cross Ambulance & Transfer v. City of Kansas City,*
705 F.2d 1005 (8th Cir. 1983)………………………………………………….……………..6

*Int'l Imps., Inc. v. Int'l Spirits & Wines, LLC*,
No. 10-61856-CIV, 2012 U.S. Dist. LEXIS 64929,
2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011)…………………………………….…………… 16

*Jacobs v. Tempur-Pedic Intern., Inc.*,
626 F.3d 1327 (11th Cir. 2010) ……………………………...……….…………………....4, 14

*King v. Johnson Wax Assocs., Inc.*,
565 F.Supp. 711, 716 (D. Md. 1983)……………………………………….……………18

*King v. Johnson Wax Assocs., Inc.*,
565 F.Supp. 711, 716 (D. Md. 1983)…………………………………………………………18

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
725 F.3d 718, 724 (7th Cir. 2013)…………………………………………….……………18

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
72 F.3d 1538 (11th Cir.1996) ………………………………...…………………… 13

*Molinos Valle Del Cibao v. Lama*,
633 F.3d 1330, 1344 (11th Cir. 2011)…………………………………………………...16

*N. Carolina Bd. of Dental Exam'rs v. FTC*,
574 U.S. 494, 515 (2015)…………………………………………………….………..6

*Parker v. Brown*,
317 U.S. 341 (1943)………………………………………………….……………… 5

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir.1995) ………………………...……………………………16

*SmileDirectClub, LLC v. Battle*,
969 F.3d 1134, 1143 (11th Cir. 2020)……………………………………………………….......6

*Southern Motor Carriers Rate Conf., Inc. v. United States*,
471 U.S. 48, 59-60 (1985)…………………………………………………………….…..6

*State Oil Co. v. Khan,*
522 U.S. 3, 118 S.Ct. 275 (1997) ……………..…………………………………..…………13

*Spanish Broadcasting System of Fla., Inc. v. Clear Channel
Communications, Inc.,*
376 F.3d 1065 (11th Cir. 2004) ………………………………….…………………… 13, 14

*Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*,
998 F.2d 1073 (1st Cir. 1993)……………………………………………….……..……..6

*Todorov v. DCH Healthcare Auth.,*
921 F.2d 1438 (11th Cir.1991) ……………………..…………………………...…………………8

*United States v. Scophony Corp. of America*,
333 U.S. 795, 804–05, 68 S.Ct. 855, 92 L.Ed. 1091 (1948)…………………………….……18

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
792 F.3d 1313, 1321–23 (11th Cir. 2015)……………………………………………...…...17

**STATUTES**

15 U.S.C. § 1………………………………………………..…………………..…1, 8, 9
15 U.S.C. § 22………………………………………………………………….……..18
HNC § 712 ……………………………………………… 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 16, 17

HNC § 732…………………………………………………….…………….…………. 3, 6, 7, 16

HNC § 733……………………………………………………………………….……..3, 8

HNC § 733……………………………………………………………………….…..… 8

Cal. Code Regs. Tit. 14, § 7605……………………………………………2, 9, 10, 14, 17

**RULES**

Fed. R. Civ. P. 12(b)(3) ………………………………….…….....…………1, 18, 19

Fed. R. Civ. P. 12(b)(6) ………………………………….…….....……....1, 4, 9, 19

Fed. R. Civ. P. 12(b)(7) ……………………………….…….....…………1, 16, 19

Fed. R. Civ. P. 19…………………………………………………….…..…...16, 17

Local Rule 7.1(a)(3)……………………………………………….…………….20

**MEMORANDUM OF POINTS AND AUTHORITIES**
**CYBA OMNIBUS MOTION TO DISMISS PURSUANT TO; FED. R. CIV. P. 12(b)(6)**
**FAILURE TO STATE A CLAIM; AND FED. R. CIV. P. 12(b)(7) FAILURE TO JOIN A**
**NECESSARY PARTY; FED. R. CIV. P. 12(b)(3) IMPROPER VENUE**

## I.     INTRODUCTION

The California Yacht Brokers Association (hereafter "CYBA") requests dismissal pursuant to Fed. R. Civ. P. 12(b)(6) Failure to State a Claim, Fed. R. Civ. P. 12(b)(7) Failure to Join Necessary Party, and Fed. R. Civ. P. 12(b)(3) Improper Venue.  These motions are based on the fact that the CYBA does not violate 15 U.S.C. § 1 (hereafter "Sherman Act") because it may neither require nor prohibit commission sharing, nor prohibit cooperative brokerage because it would violate California law including the California Harbors and Navigation Code, Section 712 (hereafter "HNC § 712") and dual fiduciary duties mandated by the California Department of Parks and Recreation, Division of Boating and Waterways, the agency that licenses and regulates California Ship and Yacht Brokers (hereafter "DBW").  Further, the allegations against the CYBA in the First Amended Consolidated Complaint (hereafter "FAC") are a patchwork of self-contradictions, innuendo, conclusions, and falsehoods which do not state a claim, necessary parties, nor venue.

## II.     CYBA EXHIBITS

The following Exhibits are true and correct copies of what they purport to be and are authenticated by the Declaration of Mark P. White, Pres. CYBA (Exhibits 1-6) and/or by Request for Judicial Notice [FRE 201] (Exhibits 1-5):

**Ex. 1** – DBW Enforcement Newsletters 2015, 2017, 2019, 2020, 2021.  State Regulation and Enforcement including at Pgs. 12-13 of Exhibit, expressly citing to HNC § 712, "…broker may pay a commission to a broker..."

**Ex. 2** – DBW Advising Publicly Seller Pays Commission. "What to Consider Before Buying a Boat or Selecting a Broker," stating, "Who pays the broker at the conclusion of the transaction?

The seller pays the commission earned by the licensed yacht and ship broker – not the buyer."
https://dbw.parks.ca.gov/?page_id=29091 (Last visited July 27, 2024).

**Ex. 3** – <u>DBW Broker Licensing Exam Study Materials</u>.  DBW requires seller's broker owes <u>fiduciary duty to buyer</u> (Pgs. 9-10), and by definition seller pays for buyer's broker representation in CA.

**Ex. 4** – <u>CYBA Code of Ethics</u>. Section 18, allows commission sharing, but does not require it. Cited by Complaint Paragraph 96, Fn. 25, and common knowledge.

**Ex. 5** – CYBA's Current Exclusive Listing Agreement.  Paragraph 4, does not provide a commission amount (i.e., by definition "negotiable"), Paragraph 10, allows cooperative brokerage and commission sharing, but <u>does not require it;</u>

**Ex. 6** – CYBA's Contemplated Exclusive Listing Agreement "No Commission Sharing." Prohibits commission sharing (At Paragraph 4: "Broker will not share the commission…"). <u>Never Adopted by CYBA</u> – i.e., violates HNC § 712, ("…broker may pay a commission to a broker…"); violates Cal. Code Regs. Tit. 14, § 7605, "Shared Listings; violates DBW's mandated dual fiduciary duty; and is "unreasonable restraint" pursuant to 15 U.S.C. § 1.

## III.    THE ALLEGATIONS OF THE FAC

### A.  THE CONCLUSORY FRAMEWORK ALLEGATIONS

The FAC's framework conclusory allegations are that there is a violation of the antitrust laws via a scheme to force sellers to pay a nonnegotiable offer of compensation to buyer's broker via "control" of the MLSs.[1]  The FAC argues albeit in conclusory fashion that the CYBA is part of the scheme to force sellers to pay for buyer's representation through a "conflict of interest" in furtherance of inflating commissions.  However, this makes no sense as to any California broker nor the CYBA (which is composed only of California brokers exclusively) because the DBW imposes dual agency and mandatory dual fiduciary duties upon all California brokers.  See Ex.3, Pgs. 9-10.  Thus, by definition, the <u>seller always pays for buyer broker representation pursuant to</u>

---

[1] The Court summed it up in its Consolidation Order (ECF 40) – i.e., that "[d]efendants conspired to impose…a **non-negotiable offer of buyer-broker compensation** (the "Buyer-Broker Commission Rule") when listing a vessel **on an MLS**.  Plaintiff further alleges that Defendants, through their **control of the MLSs**, **collectively require brokers to follow the Buyer-Broker Commission Rule**…"  See (ECF 40) [Emphasis added.]

California law, because pursuant to California law seller's broker owes a heightened <u>fiduciary duty</u> <u>directly to buyer</u>.  See Ex.3, Pgs. 9-10.  As a consequence, the CYBA cannot be part of an illegal scheme to force sellers to pay for buyer's representation when by California law seller's broker is required to represent the buyer and intrinsic to the transaction.  Further, California law specifically allows commission sharing pursuant to HNC § 712 ("…broker may pay a commission to a broker..."), thus, it cannot be expected that CYBA would prohibit commission sharing since it violates the law.

A good reason for seller's broker owing buyer a fiduciary duty is that marine vessels gather latent defects quickly over time and buyers are easily at risk of purchasing vessels that are not appropriate for them or are not as they appear.  As such, California is not a "buyer beware" jurisdiction, rather seller's broker must affirmatively protect the buyer pursuant to California law (i.e., a "buyer protected" jurisdiction).  The California policy to protect buyers is obviated by HNC § 732(a) (strict liability for "substantial misrepresentation" or "omission" if "relied" upon); HNC § 732(b) (strict liability for "false warranty of character"); HNC § 732(c) (strict liability for "continued… false warranties…"); HNC § 732(i) ("…other persons…" i.e., buyer); HNC § 732(k) ("demonstrates… negligence…"); HNC § 733(d) ("…authorizes… advertisement… of… false statements… concerning… any transaction…"); the mandatory fiduciary duty owed by seller's broker to buyer as directed by the DBW (Ex. 3).

## B.  THE KEY FACTUAL ALLEGATIONS AGAINST THE CYBA

The FAC antitrust claims against the CYBA boil down to Four (4) Keystone allegations: (1) CYBA Ethics Section 18, "require[s] its members to negotiate sharing commissions…" "prior to the submission of an Offer for Purchase." (FAC ¶ 96);  (2) CYBA Code of Ethics "requires

commission sharing" (FAC ¶ 51);   (3) CYBA "controls" all of the MLSs (FAC ¶ 169); and "founded" MLS YachtBroker.org in "Fort Lauderdale…" (FAC ¶ 79); and

(4) CYBA fosters an illegal conflict of interest (FAC ¶ 12).  All of these allegations are false on their face, or false based on judicially noticed facts, or do not state a claim even if taken as true.

## IV.    FED. R. CIV. P. 12(b)(6) FAILURE TO STATE A CLAIM

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations as true.  See *Davidson v. Capital One Bank (USA) N.A.,* 797 F.3d 1309, 1312 (11th Cir. 2015).  Further, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65.

Assessing the sufficiency of an antitrust complaint is a two-step process:

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Jacobs v. Tempur-Pedic Intern., Inc.,* 626 F.3d 1327, 1333 (11th Cir. 2010).

### A.  THE CYBA HAS INDIRECT IMMUNITY THROUGH STATE ACTION

The state action doctrine (or *Parker* immunity) exempts a state government's conduct from liability under the federal antitrust laws.  *Parker v. Brown*, 317 U.S. 341 (1943)).  In *Parker*, the Supreme Court held that the Sherman Act was not intended to restrain a state's sovereignty and that states were permitted to limit competition to promote other valuable goals.  Pursuant to *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980), non-state actors are entitled to indirect immunity if:  1) they are acting under a policy clearly articulated and affirmatively expressed by the state itself; and 2) The conduct is actively supervised by the state.  *Midical*, 445 U.S. at 104-105.

The first prong of *Midical* may be satisfied by state legislation.  *Id*. at 105.  The California Harbor and Navigation Code § 712, specifically encompasses the **conduct** of seller brokers sharing commissions to buyer brokers as it states:

> "(a) No licensed broker shall employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this article who is not a licensed broker or salesman licensed under the broker employing or compensating him or her, except that **a licensed broker may pay a commission to a broker** of another state or country."  [Emphasis added.]

The plain meaning of HNC § 712 specifically allows seller brokers to compensate buyer brokers, it is clearly **articulated** and the first prong of *Midical* is satisfied.  *Id.  See also Gold Cross Ambulance & Transfer v. City of Kansas City*, 705 F.2d 1005 (8th Cir. 1983) ("…sufficient state policy to displace competition exists if the challenged restraint is a necessary or **reasonable consequence** of engaging in the authorized activity.")

Turning to the second prong of *Midical*, for there to be active supervision, the agency acting at the direction of the state must:  1) review the substance of the allegedly anticompetitive conduct; 2) not be an active market participant; 3) have the power to modify the conduct; 4) evaluate or regulate the conduct.  See *N. Carolina Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 515 (2015).  Further, <u>courts generally agree that supervision of private action meets the requirement if authorized by state legislation</u>.  *See Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 998 F.2d 1073 (1st Cir. 1993); *Gold Cross Ambulance & Transfer v. City of Kansas City*, 705 F.2d 1005 (8th Cir. 1983).  The state is not required to compel the anticompetitive conduct for a party to receive state action immunity.  *See Southern Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 59-60 (1985).

California State California Harbors and Navigation Code, Article 2. Ship and Yacht Brokers §§ 700 – 740, clearly **authorizes** the Department Boating and Waterways to **supervise** and **enforce** HNC § 712, pursuant to HNC § 732, which states:

"**732. Denial of application, suspension, or revocation.**

The department may deny an application or temporarily suspend or **permanently revoke the license of a broker** or a salesperson **at any time** if the licensee, while a broker or salesperson, in performing or attempting to perform any of the acts within the scope of this article, has committed **any of the following acts**:
  (a) Makes any substantial misrepresentation, including a false advertisement or an omission of relevant facts upon which any person has relied.
  (b) Makes a false warranty of a character likely to influence, persuade, or induce any person with whom business is transacted under this article.
  (c) Engages in a continued and flagrant course of misrepresentation or makes false warranties whether or not relied upon by another person.
  (d) **Acts for the buyer and seller in a transaction without full disclosure of that fact to the buyer and seller and their written consent, except in the case where the selling broker is not the listing broker.**
  (e) Commingles the money or other property of his or her principal with that of his or her own or uses it for any purpose other than that for which it was entrusted, when the yacht involved in the transaction is not his or her own.
  (f) Disburses or uses entrusted money for purposes other than those specifically authorized by Section 714.

6

(g) Uses coercive or oppressive methods for the purpose of obtaining business or of procuring a listing or participating in a transaction.

(h) Quotes prices different from the gross listing prices without the consent of the seller."

(i) Engages in any other conduct constituting fraud or dishonest dealings, either with respect to his or her principal or other persons.

j) Permits his or her name to be used for the purpose of assisting any person who is not a licensed broker or salesperson to evade this article.

(k) **Demonstrates negligence or incompetence in performing any act** for which he or she is required to hold a license.

(I) As a broker licensee, fails to exercise reasonable supervision over the activities of his or her salespersons, or, as the person designated by a corporate or partnership licensee, fails to exercise reasonable supervision and control over the activities of the corporation or partnership for which a yacht and ship broker's license is required.

(m) Fails to act in accordance with, or disregards, his or her **fiduciary duty** toward a principal.

(n) **Violates** any provisions of Section 708, **712**, 714, 715, 716, 730, or 731, or the rules and regulations of the department implementing this article.

[Emphasis Added.]

Thus, proving the second prong of *Midical* by applying *N. Carolina Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 515 (2015), the Court will observe:  1) DBW is specifically charged with a duty pursuant to HNC § 732(n) to enforce HNC § 712 which specifically encompasses seller brokers sharing commissions with buyer brokers;  2) DBW is obviously not a "market participant" since it is composed of law enforcement officers paid by the State of California;  3) pursuant to HNC § 732(n) the DBW is authorized to disapprove or modify conduct within the scope of HNC § 712 (e.g., Ex. 1, modified by requiring disclaimer);  4) the DBW does in fact supervise the conduct encompassed by HNC § 712, pursuant specifically to HNC § 732(n), and as also as evidenced by the DBW enforcement newsletters citing to it (Ex. 1). Further, proof of active supervision is found at HNC § 733 ("…may revoke the license…"), and also HNC §734, (conduct "Hearings and Investigations…The department may upon its own motion… investigate the actions of any broker…").   See Ex.1, DBW Enforcement Newsletters citing the full text of HNC § 712, including in the year 2021, proving DBW authorizing buyer brokers to advertise California

licensee listings in the context of **seller brokers paying buyer brokers** pursuant to HNC § 712, so long as proper a regulatory disclosure/disclaimer is made identifying the licensed listing broker. Ex. 1, Pgs 12-13; and Ex. 2 (proving DBW is fully aware of how commissions are paid and modifying conduct with disclaimer requirement in the exact context of seller broker to buyer broker commission sharing and cooperation).

As such, it is clear that the CYBA enjoys immunity since HNC § 732 authorizes supervision and enforcement of HNC § 712 by the DBW, and the DBW actually knows of, supervises and modifies the conduct governed by HNC § 712 ("… broker may pay a commission to a broker …").

## B.  SHERMAN ACT – 15 U.S.C. § 1

In order to a state a claim pursuant to 15 U.S.C. § 1, Plaintiff must plausibly allege: (1) a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade, (3) affects interstate or foreign commerce, and (4) causes antitrust injury and damages. *See Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1455, 1459 (11th Cir.1991).  To survive a Rule 12(b)(6) challenge, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1.  SHERMAN ACT § 1 – ELEMENT 1:  FAC FAILS TO PLAUSIBLY ALLEGE AGREEMENT, COMBINATION, OR CONSPIRACY AGAINST THE CYBA

#### a.  CYBA'S SECTION 18 CAN ONLY BE PARRALEL CONDUCT SINCE COMMISION SHARING IS LEGAL AND SHARING LISTINGS BY DEFINITION OCCURS BEFORE THE OFFER

The FAC twists the plain meaning of CYBA's Section 18's general directive to "cooperate" as an act in furtherance of a conspiracy to enforce a Buyers-Broker Commission Rule. Specifically, the FAC ¶ 96 alleges:

"96.     CYBA's rules, similar to those of other co-defendant yacht broker associations, require its members to negotiate sharing commissions as soon as possible in the transaction:

Section 18. – Co-ops and Broker Commissions. Member [sic] should cooperate with other Brokers on vessels listed with him whenever it is in the best interest of the client. All cooperative agreements should be executed *as early as possible and prior to the submission of an Offer to Purchase,* and should designate the percentage of the commission and all commission splits. Negotiations concerning a vessel listed on an exclusive/central basis with one Broker should be carried on with listing Brokerage, not the owner, except with express consent of the listing Broker." [Emphasis in original.]

The plain meaning of CYBA Section 18 does not require any commission be paid to anyone including buyer brokers.  Neither does Section 18 require an offer of compensation to buyer brokers, it is unspecified and as a consequence merely allows it which is in conformance with HNC § 712.  Further, Cal. Code Regs. Tit. 14, § 7605, titled "Shared Listings" also allows cooperation.  § 7605, states:

"If a broker intends to or does **share a listing with other brokers**, he must obtain authorization in writing from his principal to do so **in his authorization to sell (listing agreement**)."  [Emphasis added.]

As such, Section 18, addresses cooperative situations including those governed by HNC § 712 and also Cal. Code Regs. Tit. 14, § 7605, making it <u>legal on its face</u>.  Clearly, § 7605, specifies that "Shared Listings" be executed in the "listing agreement," which is by definition "early" and "*prior to the submission of an Offer to Purchase*…" obviating that any cooperating broker agreement in furtherance of § 7605 would have to occur "*prior to submission of an Offer to Purchase*."  Obviously, any other sequence in events pursuant § 7605 to would result in commissions disputes and destabilize the transaction.  Similarly, common sense dictates that commission sharing agreements pursuant to HNC § 712 should be early since any other sequence (e.g. after the acceptance), would lead to commissions disputes and destabilize transactions.

The FAC presumes that CYBA Section 18 must be in furtherance of a Buyers-Broker Commission Rule, but Section 18 like HNC § 712 merely <u>allows</u> seller brokers to compensate

buyer brokers, but <u>does not require it</u>.   Finally, Section 18 clearly increases **stability** in the transaction for seller's and buyer's benefit by preventing commissions disputes and directing that <u>in the event</u> there is a commissions agreement, it be entered early.   As such, Section 18 is **reasonable**, does not require any commissions be paid to anyone including buyer brokers, is legal on its face, and as a consequence can only be at most **neutral parallel conduct**.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007) ("A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.")

**b. ALLEGATION CYBA CODE OF ETHICS REQUIRES COMMISSION SHARING IS FALSE BASED ON PLAIN MEANING AND CANNOT BE THE BASIS OF A COMBINATION, CONTRACT, OR CONSPIRACY**

The FAC <u>falsely</u> alleges in conclusory fashion "…CYBA Code of Ethics, which include[s] the **commission sharing requirement**." FAC ¶ 51, [Emphasis added.]  This is a general allegation that the entire CYBA Code of Ethics, or some unspecified Section requires commission sharing. However, the Court may review the CYBA Code of Ethics and take judicial notice of it since it is referenced repeatedly by the FAC.  FAC ¶ 95 (Fn 24); ¶ 96 (Fn 25).  Only Section 18 of the CYBA Code of Ethics addresses commissions and a cursory review of the rest of the CYBA Code of Ethics reveals the FAC's keystone allegation is a falsehood - i.e., there is no "commission sharing **requirement**" whatsoever.  As discussed *supra,* Section 18 merely permits commissions sharing, it does not require nor prohibit it.  See Ex. 4, CYBA Code of Ethics.

The FAC implies that the CYBA should prohibit commission sharing, however, HNC § 712(a), allows commission sharing ("…broker may pay a commission to a broker..."), and as such it would be illegal for CYBA to prohibit commission sharing.

    **c. THE ALLEGATION CYBA CONTROLS ALL THE MLS IS CONCLUSORY AND SELF-CONTRADICTED BY THE FAC; AND THE ALLEGATION THAT CYBA FOUNDED YACHTBROKER.ORG IS FALSE AND EVEN IF TAKEN AS TRUE DOES NOT PLAUSIBLY ALLEGE MARKET POWER**

The FAC alleges CYBA "control" of all of the MLSs in conclusory fashion, there is no plausible allegation as to how the CYBA could control BG MLS nor YATCO MLS. The FAC itself requires that CYBA plausibly "control" of YATCO MLS, since it alleges specifically that YATCO MLS "has the largest and most reliable inventory of new and used yachts for sale." FAC ¶ 59. This is not a conclusion, it is an alleged fact that YATCO dominates the MLS market and as consequence by the FAC's own terms it must plausibly allege the CYBA "control" YATCO MLS in order to exert market power. Neither does the FAC plausibly allege any control over BG MLS. Without alleging market control over YATCO MLS and BG MLS, there can be no allegation of market control even if CYBA had created YachtBroker.org.

Nevertheless, the FAC's one plausible allegation of CYBA "control" over any MLS is that it "founded" YachtBroker.org/Yachtr.com. See FAC ¶ 10, 47, 48, 49, 79, 80. However, this makes no sense since the FAC simultaneously alleges that the CYBA controls BG MLS and YATCO MLS,[2] while simultaneously supporting the creation of a direct competitor in YachtBroker.org, thereby diluting the market share of YATCO MLS/BG MLS, reducing their profits, fostering competition, reducing fees, and reducing their market power obviating that even if CYBA "founded" the competitor MLS it would be mere parallel conduct since it would be for a valid procompetitive purpose. Even taking the allegation as true, the allegation of creating

---

[2] All allegations of "control" over BG MLS and YATCO MLS are conclusory and cannot be taken as true – e.g., FAC ¶ 169 ("Defendants control the MLS…" but no indication as to "how" the CYBA controls BG MLS and YATCO MLS); the only plausible allegation of control by CYBA is through false allegation of founding/owning YachtBroker.org.

YachtBroker.org cannot form the basis of market power since YachtBroker.org is an obscure MLS and it is YATCO who dominates the market according the FAC.  FAC ¶ 59.

### d. THE ALLEGATIONS OF CONSPIRACY BY CYBA FOSTERING VIA A CONFLICT OF INTEREST MAKES NO SENSE SINCE DUAL FIDUCIAL DUTIES ARE MANDATED BY CALIFORNIA AND THE DBW

The FAC alleges in conclusory fashion that the CYBA fosters a "conflict of interest" stating that "…**seller is required to pay a commission to the broker representing the buyer even though the interest of the buyer is opposed to the seller's interest.**".  See FAC ¶ 12, [Emphasis added.]  However, this makes absolutely no sense since the CYBA has no such requirement and the CYBA (which is composed only of California brokers exclusively) is subject to dual agency and dual fiduciary duties mandating that seller always pays for buyer's representation irrespective of commissions sharing and the so called "conflict of interest" inherent in dual agency is mandated by DBW– i.e., seller's broker is duty bound to represent buyer via modified and heightened dual fiduciary duties.  See Ex.3, Pgs. 9-10.

As a consequence, the CYBA cannot be party to an illegal scheme to force sellers to pay for buyer's representation when California law and the DBW make it is intrinsic to the transaction. One rational basis for this is it is very easy for sellers to conceal defects in the yacht industry and California requires that buyers' interests be represented by seller's broker who must affirmatively investigate the vessel to ensure extremely thorough disclosures as well as vet and protect the buyer as a fiduciary.  The FAC argues that buyers do not need representation anymore because of technology and/or their direct use of MLSs (FAC ¶ 4), but the State of California's statutes and policies say otherwise and mandate that buyers be represented and protected specifically by seller's broker, without an agreement between them, nor requiring seller's consent, and at seller's expense. See Ex.1, 2, 3.

**2.   SHERMAN ACT § 1 – ELEMENT 2:  PLAINTIFF FAILS TO ALLEGE AN UNREASONABLE RESTRAINT ON TRADE BY THE CYBA**

The "Rule of Reason" is the "prevailing standard" for determining a restraint's effect upon competition in a relevant market. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). *See also Business Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717, 726, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988) ("there is a presumption in favor of a rule-of-reason standard"); *State Oil Co. v. Khan,* 522 U.S. 3, 22, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) ("[T]he majority of commercial arrangements subject to the antitrust laws should be evaluated under the rule of reason").

Under Eleventh Circuit case law, alleged Sherman §1 agreements analyzed under the rule of reason require a plaintiff "to prove (1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Levine v. Cent. Fla. Med. Affiliates, Inc.,* 72 F.3d 1538, 1551 (11th Cir.1996); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc*., 376 F.3d 1065, 1071 (11th Cir. 2004).

Here, it is clear from the CYBA Code of Ethics (Ex. 4) that <u>CYBA does not require</u> any commissions sharing to any cooperating broker including buyer brokers.  Further, the CYBA cannot prohibit cooperating brokerage, nor commission sharing, nor seller's "conflict of interest" in representing buyer's interest because to so would violate HNC § 712, violate Cal. Code Regs. Tit. 14, § 7605, and also violate the DBW mandated dual fiduciary duty. See Ex.3.  Further, the CYBA does not specify commissions, commission sharing, nor amounts since that is not its place or purpose.  See Ex.4.  The CYBA cannot prohibit commissions sharing pursuant to California law, neither does it mandate it, as a consequence the FAC does not allege an unreasonable restraint being imposed by CYBA since the CYBA does not require compensation to buyer brokers.

13

### a. THE FAC FAILS TO ALLEGE PLAUSIBLE ANTI-COMPETITIVE EFFECT NOR A PRICE INCREASE IN BROKER COMMISSIONS

The FAC's allegations are simply bald statements and speculations that commissions are higher than they would be if seller did not pay for buyer broker representation. "The plaintiff has the burden of demonstrating damage to competition with 'specific factual allegations.'" *Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065 (11th Cir. 2004). Further, even if the FAC could plausibly allege that commission prices are higher, "Higher prices alone are not the "epitome" of anticompetitive harm. Rather, consumer welfare, understood in the sense of **allocative efficiency**, is the animating concern of the Sherman Act." *Jacobs v. Tempur-Pedic Intern., Inc.,* (626 F.3d 1327, 1339 (11th Cir. 2010) [Emphasis added.]; See *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 221, 113 S.Ct. 2578, 2587, 125 L.Ed.2d 168 (1993).

Here, the FAC makes no allegations as to the efficiency of the market and what the consequences in an illiquid market such as yacht brokerage would be by reducing or changing the supply of buyer brokers' commissions. Neither does the FAC address the consequence to the market if buyers' representation is reduced inclusive of the harm to buyers in a personal property market where there are always numerous latent defects (i.e., the marine environment degrades these types of assets rapidly and latently). However, the consequence should be obvious, there will be less buyers. It stands to reason that if you reduce the supply of commissions for buyer's brokers and reduce the protections afforded to buyers where buyers are prone to be harmed through undisclosed/undiscovered latent defects, the consequence will be **less demand** for yachts. This means that sellers will suffer a reduction in the price of their yachts (and a reduction in liquidity). Applying the Rule of Reason to these allegations results in a finding that this FAC has not alleged an unreasonable restraint.

### b. PROCOMPETITIVE EFFECT: PROTECTING BUYERS AND MARKET

The FAC completely ignores the procompetitive effect that both seller and buyer brokers should play in protecting buyers from latent undisclosed or undiscovered defects inherent to marine environment vessels. It is all too easy to "dress" a boat and sell it to an unsuspecting buyer – California's solution is to mandate that seller's own broker must represent and protect buyer. If buyers are left with less representation, they will inevitably end up with vessels that are less than they thought they were getting and the market as a whole will suffer – everyone loses. By "anticompetitive," the law means that a given practice both harms allocative efficiency and "raises the prices of goods above competitive levels or diminishes their quality." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.* 51 F.3d 1421, 1433 (9th Cir. 1995). There is more at play than just the total amount of commission paid by the yacht seller and to think otherwise is myopic. Seller agreeing to pay buyer broker, gives incentive to buyer brokers to gather buyers as well as protect them as a principal, and for both reasons increases demand in the market for seller's benefit.

### V. FED. R. CIV. P. 12(b)(7) FAILURE TO JOIN A NECESSARY PARTY

Dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(7), for failure to join a party under Rule 19, is a "two-step inquiry." *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003). "First, a court must decide whether an absent party is required in the case under Rule 19(a)." *Int'l Imps., Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2012 U.S. Dist. LEXIS 64929, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011) (O'Sullivan, Mag. J.) (citing *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011)). An absent party is considered necessary (i) if, in its absence, the court cannot accord complete relief among the existing parties to the action; (ii) if the nonparty's absence would have a prejudicial effect on that party's ability to protect its interest relating to the subject of the action;

15

or (iii) if, due to the absent party's related interest, the nonparty's absence would leave the existing parties at a substantial risk of incurring inconsistent obligations upon the court's disposition of the current action. Fed. R. Civ. P. 19(a)(1). Second, if the absent party's joinder is not feasible—*i.e.*, joinder would defeat the court's subject-matter jurisdiction, the absent party is not subject to the court's personal jurisdiction, or the absent party properly objects to the venue of the action—the court must consider if, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b)

Here, the CYBA has considered changing its exclusive listing agreement to a no commission sharing structure. See Ex. 5 & 6. However, the CYBA cannot prohibit commission sharing without running afoul of California law and DBW regulations. See Ex. 6. As such, it is clear that the State of California and the DBW inclusive of HNC are a necessary parties because they authorize: 1) seller brokers to pay buyer brokers a commissions pursuant to HNC § 712;  2) a "conflict of interest" that seller's broker represent the buyer's interest pursuant to HNC §732(d) and a DBW mandate that the FAC seeks to eliminate.  Without the State of California nor DBW: (i) the Court cannot accord complete relief among the existing parties to the action since California law, rules, and regulations will remain which mandate that seller will pay for a conflict of interest in buyer's representation via its own broker because its broker is a fiduciary of buyer; (ii) the absence of the State of California and DBW will prejudice CYBA's ability to protect its interest relating to the subject of the action since the CYBA must comply with California law and supervising authorities (e.g., DBW); and (iii) the absence of the State of California and DBW creates a substantial risk of incurring inconsistent obligations upon the court's disposition of the current action.

The FAC appears non-cognizant to these important legal issues including the HNC and DBW, and obviates it is a "shotgun pleading."[3]  Further, the FAC clearly wants to prevent seller from paying for buyers' representation and to negate the intrinsic conflict of interest.  See FAC ¶ 12, ¶ 84 ("…with adverse interests…"), ¶ 88 ("…diametrically competing interests."), ¶ 94 ("CYBA rules also direct brokers to cooperate…even though… competing interests…", ¶ 161 ("… yacht sellers have been forced to pay commissions for brokers who represent buyers… with…competing interests…").  However, to do this they need to add the State of California and the DBW as a necessary parties.  Further, the FAC wants to do away with cooperative brokerage as it cites to CYBA's Section 18 and Code of Ethics, as well as do away with dual agency, the dual fiduciary duty, and all commission sharing (irrespective of HSN § 712 and Cal. Code Regs. Tit. 14, § 7605, titled "Shared Listings"), and any and all of this requires changing California State law as well as how the HNC is regulated and enforced by the DBW – mandating California and/or the DBW as necessary parties.

## VI.    FED. R. CIV. P. 12(b)(3) IMPROPER VENUE:  THE CYBA DOES NOT DO "SUBSTANTIAL BUSINESS" IN THE SOUTHERN DISTRICT OF FLORIDA

Section 12 contains the venue provision for corporate defendants sued under the antitrust laws. See 15 U.S.C. § 22 ("…in any district wherein it … transacts business.");  *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013).  As such, venue is appropriate in any district where the corporation engages in "any substantial business operations." *United States v. Scophony Corp. of America*, 333 U.S. 795, 804–05, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). A corporation can transact business within a district even if all of the relevant transactions are

---

[3] See *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) ("…complaint that [is] ... replete with conclusory, vague, and immaterial facts… asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions…").

interstate in character.  *King v. Johnson Wax Assocs., Inc.*, 565 F.Supp. 711, 716 (D. Md. 1983).

According to the *King* opinion, "courts generally are in agreement that a corporation's contacts

with a district must be somewhat regular and continuous; meager, sporadic dealings within the

district are not sufficient." *Id.*

      The FAC alleges that the CYBA "founded" the MLS YachtBroker.org/Yachtr.com, which

is "company is headquartered in Fort Lauderdale, Florida." FAC ¶ 79.  However, based on the

declaration submitted herewith, the allegation is categorically false and the CYBA has no

affiliation whatsoever to YachtBroker.org/Yachtr.com, did not found it, does not own it, does not

control it, and has no knowledge of its innerworkings, policies, nor operations.  Dec. M. White,

Pres. CYBA.  In fact, the CYBA has no officers nor ownership interest in any of the MLSs named

inclusive of YATCO MLS and BG MLS.

      Further, the CYBA exists and operates as a nonprofit corporation solely in California – i.e.,

it has no business in the Southern District of Florida.  The Declaration of Mark P. White, President

of the CYBA confirms that the CYBA has: 1) Not registered in Florida; 2) No license in Florida;

3) No office in Florida; 4) No employees in Florida; 5) No marketing in Florida; 6) No marketing

to Florida brokers; 7) No marketing to Florida residents; 8) No sales in Florida, 9) No real property

in Florida; 10) No personal property in Florida; 11) No telephone number in Florida; 12) No

mailing address in Florida; 13) No bank account in Florida; 14) No insurance in Florida; 15) Does

not pay any taxes in Florida; 16) No Officers nor Directors living in Florida; 17) All members are

licensed in CA; 18) All CYBA members are required to have a business address in California; 19)

All CYBA members must display their paper license in California; 20) CYBA'S Form Agreements

are only available to its California Licensed Members.  See Dec. M. White, Pres. CYBA.  Thus,

since the CYBA does not do substantial business in the district nor in the State, venue is improper in the Southern District of Florida.

## VII.   CONCLUSION

For all of the aforementioned reasons stated herein the CYBA hereby requests it be dismissed pursuant to Fed. R. Civ. Proc. 12(b)(6) for Failure to State a Claim, Fed. R. Civ. Proc. 12(b)(7) for Failure to Join Necessary Parties; and Fed. R. Civ. Proc. 12(b)(3) Improper Venue.

### **Pre-Filing Conference Pursuant to Rule 7.1(a)(3)**

Counsel for the CYBA certifies that it has complied with Rule 7.1(a)(3) and has in good faith met and conferred with all parties by emails sent on June 29, 2024, and again on July 8, 2024, to counsel for Plaintiffs and all other Defendants who have appeared (without response).  As such, counsel has conferred with all parties who may be affected by this motion in an effort to resolve the issues raised in this motion and been unable to do so.

Date:  August 1, 2024

Respectfully submitted,

By: */s/ Emily Heim*
Emily Heim
FL Bar No. 1015867
Bayramoglu Law Office, LLC
emily@bayramoglu-legal.com
11540 W. Warm Springs Rd., Ste 100
Henderson, NV 89014
Tel: (702) 462 - 5973

By: */s/ Christopher M. Brainard*
Christopher M. Brainard, esq.
*Pro Hac Vice* (CA SBN 199444)
Christopherbrainard@gmail.com
8549 Wilshire Blvd., Pmb 2095
Beverly Hills, CA 90211
Tel: (310) 266 – 4115

*Attorneys for California Yacht Brokers Association, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that on August 1, 2024, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

By: */s/ Emily Heim* _____
EMILY HEIM, ESQ.
Bayramoglu Law Offices LLC

20