UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-20805-KMM (Moore/Reid)

YA MON EXPEDITIONS, LLC, a
limited liability corporation, on behalf of
itself and all others similarly situated,

        Plaintiff,

v.

INTERNATIONAL YACHT BROKER'S
ASSOCIATION, INC., et al.,

        Defendants.        /

## DEFENDANT, YATCO, LLC'S, MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW

Defendant, YATCO, LLC ("YATCO"), pursuant to Federal Rule of Civil Procedure 7(b), Southern District of Florida Local Rule 7.1, and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et. seq.*, moves the Court for an order: (i) directing Plaintiffs to arbitrate their claims against YATCO; and, (ii) staying the proceedings against YATCO pending completion of arbitration.

**I.    INTRODUCTION.**

In this putative class action, Plaintiffs purport to have sold pre-owned boats through brokers, and allege Defendants conspired to require them to pay "a supracompetitive total aggregate commission fee that includes an inflated brokerage fee for the buyers' broker" claiming the sale. (Consolidated Class Action Compl., ECF No. 140, PDF p. 1/Doc. p. 2). Relevant here, Plaintiffs claim they were harmed when their brokers employed online platforms, including those operated by YATCO, to list Plaintiffs' boats for sale. However, before anyone can list a boat on YATCO's platform, the broker *must* enter into YATCO's agreement with a mandatory arbitration provision for any disputes relating to the listing. The Court should enforce the arbitration provision

of YATCO's underlying agreement and compel Plaintiffs to arbitrate their claims against YATCO, and, further, the Court should stay all proceedings against YATCO pending an arbitration decision. If there is a dispute about the scope of the arbitration provision, it should be decided by the arbitrator, as set forth below.

## II.     FACTUAL BASIS TO COMPEL ARBITRATION AND STAY PROCEEDINGS.

A.     A broker must execute a YATCO SaaS Subscriber Agreement before a broker can list a boat on YATCO's websites;

B.     The SaaS Subscriber Agreement in place during the putative class period contains a binding arbitration provision, class action waiver, and delegation provision that mandates the arbitrator rule on arbitral issues;

C.     YATCO requested Plaintiffs identify the brokers that allegedly listed the subject boats on YATCO websites; however, Plaintiffs declined to identify the brokers;

D.     YATCO does not know the identity of the alleged brokers;

E.     The unknown brokers could only have listed a boat on a YATCO website pursuant to an executed SaaS Subscription Agreement; and,

F.     Any boat listed on a YATCO website during the putative class period could only have been listed pursuant to an executed SaaS Subscription Agreement.[1]

---

[1] Arguments in this Motion to Compel Arbitration should apply equally to any unnamed brokers on behalf of alleged unnamed class member boat sellers. YATCO invokes its right to arbitrate all claims for anyone who listed a boat on its sites.

### III.   RELEVANT FACTS

1. This Action is a consolidation of four separate actions in which Plaintiffs alleged various Defendants enforced "an anti-competitive rule that requires pre-owned boat and yacht sellers to pay a brokerage fee to the buyer's broker, as well as a total aggregate commission fee that is inflated as a condition for selling their boats or yachts." *See* Order on Consolidating Cases, (ECF No. 40, p. 2).

2. On April 1, 2024, the Court consolidated *Ya Mon Expeditions, LLC v. International Yacht Broker's Association, Inc., et al.*, Case No. 1:24-CV-20805-KMM (filed Feb. 29, 2024), *Snell v. Allied Marine, Inc., et al.*, Case No. 0:24-CV-60461-KMM (filed Mar. 22, 2024), and *Magna Charter, LLC v. Boats Group, LLC, et al.*, Case No. 24-CV-21146-KMM (filed Mar. 26, 2024), into the lower-numbered action (the "Consolidated Action") for all purposes, with all pleadings and motions to be filed in the instant action. *See id.* (ECF No. 40, p. 4).

3. On May 8, 2024, the Court consolidated a fourth action, *Defosey v. Boats Group, LLC, et al.*, Case No. 1:24-CV-21766-KMM (filed May 6, 2024), with the Consolidated Action. *See* Paperless Order Consolidating Cases (ECF No. 123).

4. YATCO is a named defendant in all four consolidated actions.

5. On June 10, 2024, Plaintiffs filed their Consolidated Class Action Complaint ("CCAC") on behalf of purported sellers in the United States of pre-owned boats, who sold a boat through brokers listed in the CCAC, on an alleged multiple listing service ("MLS") website, and allegedly paid a buyer broker a commission during the Class Period. *See* CCAC, (ECF No. 140 at PDF p. 2/Doc. p. 1).

6. Plaintiffs allege they listed pre-owned boats for sale, through a broker, on a "MLS" web platform, and paid a buyer's broker commission to the broker. *See id.*, at ¶¶ 26-31 (ECF No. 140). Plaintiffs assert the conduct alleged in their pleading impacts interstate commerce and trade. *Id.* at ¶¶ 22, 63 (ECF No. 140).

7. Plaintiffs allege Defendants conspired to "adopt, impose, and enforce an anticompetitive restraint that, as a condition for selling their yachts, requires pre-owned yacht sellers to pay a supracompetitive total aggregate commission fee that includes an inflated brokerage fee for the buyer's broker." *See Id.*, at ¶ 1 (ECF No 140).

8. Plaintiffs allege three Counts pursuant to the Sherman Antitrust Act of 1890 and the Clayton Antitrust Act of 1914. *See Id.* (PDF pp. 51, 53-54/Doc. pp. 50, 52-53).

9. YATCO is a Florida business headquartered in Deerfield Beach, Florida. *See* Aug. 2, 2024 Decl. of Lee McIntire in Support of Defendant, YATCO, LLC's Motion to Compel Arbitration and Stay Proceedings, ¶ 4 (the "McIntire Declaration"). A copy of the McIntire Declaration is attached as Exhibit "1."

10. YATCO provides various independent boat platform services, including operating websites and boat member listing services, known as YATCO.com and YATCOBOSS.com. *Id.* at ¶ 5.

11. In order to list a boat on YATCO's websites, a broker must execute an agreement ("Subscriber"). *Id.* at ¶ 6.

12. As part of its services for any boat listings, YATCO requires the listing broker (*i.e.*, Subscriber), to first enter into an executed written YATCO SaaS Subscriber Agreement ("SaaS Agreement")). *Id.*, at ¶ 7, and Ex. "A" thereto.

13. The SaaS Agreement has been in place since 2020. McIntire Decl., ¶ 8. All parties who list on a YATCO website have to execute a SaaS Agreement by wet signature, digital signature, or agreed as terms of service when logging into YATCO BOSS, **before** a boat can be listed on one of YATCO's websites. *Id.*

14. An authorized representative of the Subscriber must sign the SaaS Agreement on behalf of the Subscriber. *Id.* at ¶ 9. Authorized Subscriber representatives must electronically sign and date the SaaS Agreement and click "I AGREE", acknowledging they are authorized representatives of the Subscriber, and they have reviewed, accepted and agreed to the terms in the SaaS Agreement. *See* McIntire Decl., ¶ 9, and Ex. "A."

15. YATCO Subscribers agree to the terms of the SaaS Agreement, which provides (in capital letters on the first page), for mandatory binding arbitration and a class action waiver. *See id.* at ¶ 10 and Ex. "A" at p. 1 and § 14.3.

16. Without agreeing to the mandatory binding arbitration and class action waiver, Subscribers would not be able to list a boat for sale on YATCO's websites or platforms. *See* McIntire Decl., ¶ 11.

17. The SaaS Agreement provides, in pertinent part:

> **IMPORTANT NOTICE: DISPUTES ABOUT THIS AGREEMENT AND THE SERVICES PROVIDED BY YATCO ARE SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN THE "MANDATORY ARBITRATION AND CLASS ACTION WAVIER" SECTION BELOW.**
>
> \*\*\*
>
> [§ 14.3] Mandatory Binding Arbitration and Class Action Waiver. PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. This Agreement is governed by and

construed in accordance with the internal laws of the State of Florida without giving effect to any choice or conflict of law provision or rule that would require or permit the application of the laws of any jurisdiction other than those of the State of Florida. The application of the United Nations Convention on Contracts for the International Sale of Goods is expressly excluded.

Claims relating to this Agreement or the Service will be resolved through final and binding arbitration, except as set forth below. The parties agree that the Agreement affects interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions. Initial Dispute Resolution: The parties agree that most disputes can be resolved without resort to litigation. The parties agree to use their best efforts to settle any dispute, claim, question, or disagreement directly through consultation with each other, and good faith negotiations shall be a condition to either party initiating a lawsuit or arbitration. Accordingly, before initiating a lawsuit or arbitration, Subscriber Agrees to contact YATCO to attempt to resolve the dispute in good faith.

Binding Arbitration & Class Action Waiver: If the parties do not reach an agreed-upon solution within a period of thirty (30) days from the time the informal dispute resolution is initiated under the Initial Dispute Resolution provision above, then either party may initiate binding arbitration as the sole means to resolve claims, subject to the terms set forth below. Specifically, all claims arising out of or relating to the Agreement (including its formation, performance and breach), the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, excluding any rules or procedures governing or permitting class actions.

***

THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

***

The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of

> or relating to the interpretation, applicability, enforceability or formation of the Agreement, including, but not limited to any claim that all or any part of the Agreement is void or voidable, or whether a claim is subject to arbitration.
>
> \*\*\*
>
> Arbitration will be held in Broward County, Florida.
>
> \*\*\*

See Ex. "A" to McIntire Decl., at p. 1; § 14.3.

18. Plaintiffs allege they were sellers of pre-owned boats, who acted through a broker that listed their boats for sale on a YATCO website, and paid a broker commission during the class period. This could only occur *if* Plaintiffs' brokers entered into the SaaS Agreement with YATCO. *See* CCAC. (ECF No. 140 at PDF p. 2/Doc. p. 1).

19. YATCO does not know the identity of the brokers that allegedly listed the four putative class representatives' boats on YATCO's website. The CCAC is silent as to the identity of the boat listed, or the broker listing, on a YATCO website.

20. YATCO requested the identity of the brokers that purportedly listed a boat on YATCO's websites from Plaintiffs. *See* McIntire Decl., at ¶ 12; and "Composite Ex. B" thereto (Four June 4, 2024 letters to Plfs.' counsel requesting identification of the vessels purportedly listed on YATCO's websites, which would have revealed the listing brokers).

21. Despite YATCO's requests, YATCO has not received any information from Plaintiffs showing the identity of the alleged brokers or the subject boats. Three of the Plaintiffs did not respond to YATCO's request for the identity of the broker, and a fourth stated that the

identity could be obtained through discovery.[2]  *See* McIntire Decl., at ¶ 13; "Composite Ex. B" and Ex. "C" thereto (June 10, 2024 response regarding the "Paradise Found" vessel owned, stating it is anticipated the requested information will be provided through formal discovery).

22.  If, in fact, Plaintiffs' brokers had listed Plaintiffs' boats on YATCO's websites, it could only have been done pursuant to an executed SaaS Agreement. Plaintiffs are bound by the terms of the Mandatory Binding Arbitration and Class Action Waiver Provision in the SaaS Agreement. *See* McIntire Decl., ¶ 14, Ex. "A."

23.  YATCO demands arbitration pursuant to the SaaS Agreement (*See* McIntire Decl., ¶ 15), and requests the Court direct Plaintiffs to arbitrate their claims against YATCO, including whether any claim is subject to arbitration, and stay the proceedings against YATCO pending an arbitration award. A proposed order is attached hereto as Exhibit "2."

## IV.  ARGUMENT

### A.  Legal Standard.

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, ("FAA"), "establishes a general federal policy favoring arbitration." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1316 (S.D. Fla. 2004) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-218 (1985)). Under

---

[2] YATCO obviously cannot participate in discovery in this matter and seek discovery and protect its right to compel arbitration. *See Calcaterra v. Baptist Health S. Fla., Inc.*, Case No. 1:23-cv-20364-KMM, 2024 WL 2109349, at *6 (S.D. Fla. May 9, 2024) (granting defendant's motion to compel arbitration; noting a waiver of the right to arbitration can occur where "[a] party has acted inconsistently with the arbitration right.").

federal and Florida law, a party has a right to arbitrate where: (1) a valid, written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and, (3) the right to arbitrate has not been waived. *See Sims*, 336 F. Supp. 2d at 1326; *Phillips v. Lyons Heritage Tampa, LLC*, 341 So. 3d 1171, 1174 (Fla. 2d DCA 2022) (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999), *rev. denied*, No. SC 22-918, 2022 WL 4939287. Where parties enter into a signed arbitration agreement, district courts must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. This Court has recognized, on a motion to compel arbitration, a district court may consider evidence outside the four corners of the complaint. *See e.g., Calcaterra v. Baptist Health S. Fla., Inc.*, Case No. 1:23-cv-20364-KMM, 2024 WL 2109349, at *2 (S.D. Fla. May 9, 2024) (noting the Court may consider matters outside the four corners of the complaint (citations omitted)).

**B.  Claims Against YATCO Should Be Arbitrated.**

**1.  A Valid, Written Agreement With An Arbitration Clause Would Have to Exist if Plaintiffs' Boats Were Listed on YATCO's Website.**

Section 2 of the FAA "requires the enforcement of arbitration clauses in contracts covered by the provisions of the Act..." *Sims*, 336 F. Supp. 2d at 1316. That section provides, "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2.

Because no boat could be listed on YATCO's website without an executed SaaS Agreement, and Plaintiffs will not disclose the alleged brokers such that YATCO can present the executed SaaS Agreement to the Court, the actual agreements cannot be presented. However, no boat could be listed without an executed SaaS Agreement. *See* McIntire Decl., ¶ 6. If Plaintiffs' boats were in fact listed on YATCO's website, there is an executed SaaS Agreement.

If a boat was listed on YATCO's site, YATCO has a right to arbitrate pursuant to the SaaS Agreement. The SaaS Agreement is an enforceable written agreement between YATCO and Plaintiffs, through Plaintiffs' agents (i.e., the brokers), which provides: (i) the parties agree the SaaS Agreement affects interstate commerce and the FAA governs the interpretation and enforcement of its arbitration provisions; and, (ii) claims relating to the SaaS Agreement or the service will be resolved through binding arbitration. *See* Ex. "A" to McIntire Decl., § 14.3.

In their pleading Plaintiffs assert the subject conduct impacts interstate commerce and trade. *See* (ECF No. 140) at ¶¶ 22, 63. The SaaS Agreement Plaintiffs would have entered into through their brokers also provides the parties agree the SaaS Agreement affects interstate commerce. *See* Ex. "A" to McIntire Decl., § 14.3.

The SaaS Agreement is a valid, signed written agreement with an arbitration provision. The Subscriber, individual or entity listing a particular boat for a seller, would have had to execute a SaaS Agreement on behalf of the seller, with YATCO in order to list the boat. *See* McIntire Decl., ¶¶ 6-7. Because a valid, signed written agreement with an arbitration provision would exist if a boat was listed on YATCO's website, the Motion to Compel should be granted.

### 2. An Arbitrable Issue Exists.

#### a. The SaaS Arbitration Provision is Broad & Covers all Claims.

Courts construing contract language in an arbitration provision, including this Court, have found the phrase "arising out of or related to" is broad for contracting parties. *See Calcaterra*, 2024 WL 2109349, at *4; *see also Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324-KMM, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013) (Order granting in part Def.'s Mot. to Compel Arbitration), and cases cited therein (finding claims fell "squarely under the broad language of the Arbitration Provision.").

The SaaS Agreement contains a broad arbitration provision. It states: "[s]pecifically, all claims arising out of or relating to the [SaaS] Agreement (including its formation, performance and breach), the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." *See* Ex. "A" to McIntire Decl., at § 14.3.

Plaintiffs' claims against YATCO arise out of the purported listing of their boats on YATCO's websites. Any such listing is governed by and subject to the SaaS Agreement and its arbitration provision, which requires arbitration of "all claims arising out of or relating to the SaaS Agreement, (including its formation, performance and breach), the parties' relationship with each other and/or [Plaintiffs'] use of the Services." Plaintiffs must arbitrate their claims against YATCO; therefore the Motion to Compel Arbitration should be granted.

#### b. The SaaS Arbitration Provision Contains a Delegation Clause.

The SaaS Agreement also contains a delegation clause, which provides for an arbitrator's determination as to the scope of the arbitration provision, instead of a court. The delegation clause

demonstrates a "clear and unmistakable" intent for an arbitrator to determine "arbitrability." *See JPay, Inc. v. Kobel*, 904 F.3d 923, 938 (11th Cir. 2018). Where a contract contains a "clear and unmistakable" intent for an arbitrator to determine arbitrability, a court should grant a motion to compel arbitration once the motion is made. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-69 (2019) ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *see also WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 895-96 (11th Cir. 2020) (Where the parties expressly incorporate the AAA rules into an arbitration provision, this alone serves as a clear an unmistakable delegation of questions of arbitrability to an arbitrator); *see also Shea*, 2013 WL 3264521 at *4 (granting motion to compel arbitration finding "clear and unmistakable evidence" of the parties intent to delegate the issue of arbitrability and that arbitrator should decide gateway determinations where parties explicitly incorporated rules of the AAA and JAMS into the arbitration provision).

Here the express statement for arbitrability to be determined by an arbitrator, along with the express incorporation of the AAA rules, shows a clear and unmistakable delegation of arbitrability and "gateway determinations." *See Shea*, 2013 WL 3264521 at *4. The SaaS Agreement's Arbitration Provision provides: "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the [SaaS] Agreement, including, but not limited to any claim that all or any part of the Agreement is void or voidable, or whether a claim is subject to arbitration." *See* Ex. "A" to McIntire Decl., at § 14.3.

The SaaS Agreement contains a delegation clause that covers "interpretation, applicability, enforceability or formation", so the Court should grant this Motion to Compel Arbitration upon finding a valid agreement would be in place if the boat was listed on a YATCO website.

### 3.   No Right to Arbitrate Has Been Waived.

YATCO has now demanded and moved to compel arbitration at the first opportunity in these proceedings. There has been no waiver.[3]

### 4.   Estoppel Bars Plaintiffs From Refusing to Arbitrate.

Plaintiffs are barred or estopped from refusing to arbitrate for two reasons: (i) Plaintiffs, through their brokers, would have had to enter into an SaaS Agreements to list their boats through their agent-brokers; and, (ii) Plaintiffs cannot rely on the listing agreement they entered into in order to prosecute their claims in this Action, but then disclaim the terms of such agreements.

"When deciding whether the parties have agreed to arbitrate certain matters, [district courts] generally apply state law principles governing the formation of contracts." *Panchal v. T-Mobile USA, Inc.*, No. 8:24-cv-456-WFJ-TGW, 2024 WL 2293180, slip op. at *2 (M.D. Fla. May 21, 2024). Under Florida law, "a non-signatory to an arbitration agreement is bound to the agreement 'when the signatory ... is authorized to act as the agent of the person sought to be

---

[3] YATCO has attempted to obtain the identity of the brokers and the boats before filing this motion, but were unable to do so. YATCO is unaware of whether the boats were actually listed on its website, which would compel arbitration, or were not listed on the website, which would be grounds for dismissal. *See* McIntire Decl., at ¶ 12; "Composite Ex. B". Plaintiffs failed to supply that information. *See id.* at ¶ 13.

bound[.]'" *Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 495 (Fla. 5th DCA 2015) (internal quotation omitted). "'An agency relationship can arise by written consent, oral consent, or by implication from the conduct of the parties.'" *Fi-Evergreen Woods, LLC*, 172 So. 3d at 496 (internal quotation omitted) (finding husband was authorized agent of patient-wife to sign agreement which included arbitration provision). "[A]n agent can bind a principal to an arbitration agreement just like any other contract." *Id.* at 497.

"The essential and basic feature underlying the relation of a broker to his employer, often called a principal, or improperly, a client is that of agency." *Hershey v. Keyes Co.*, 209 So. 2d 240, 242 (Fla. 3d DCA 1968) (noting real estate broker is an agent of principal in every sense).

Here, Plaintiffs' brokers were Plaintiffs' agents and therefore, Plaintiffs are bound by the SaaS Agreement's arbitration provision for listing their boats. *See Fi-Evergreen Woods, LLC*, 172 So. 3d at 494. Although Plaintiffs failed to disclose to YATCO the actual brokers they used for purported listings on YATCO's websites (*see* McIntire Decl., ¶ 13), Plaintiffs, through their broker agents, are bound by the terms of the SaaS Agreement and its arbitration provision. Plaintiffs should not be allowed to rely on the SaaS Agreement for their purported boat listings on YATCO's websites, and then disclaim the arbitration provision in that same agreement that forms the basis for their claims. The Court should grant this Motion to Compel Arbitration.

C.  **Proceedings Against YATCO Should be Stayed Pending Arbitration Decision.**

Where a lawsuit is brought upon any issue referable to arbitration under a written agreement, and the district court is satisfied the issue is referable to arbitration, upon application of a party the court shall stay the trial of the action until arbitration is had. *See* 9 U.S.C. § 3. The United States Supreme Court recently determined Section 3 of the FAA requires courts to stay a

lawsuit pending arbitration when a court finds a dispute is subject to arbitration, and a party requests a stay, and that the court does not have discretion to dismiss the action. *See Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) (resolving a Circuit split, the United States Supreme Court determined § 3 of the FAA does not permit a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration).

This Court has recognized claims between a signatory and non-signatory can be compelled to arbitration. *See e.g., Calcaterra*, 2024 WL 2109349, at *6 (granting motion to compel arbitration and staying proceedings in action by employee against former employers even though one defendant was not a signatory where employment agreement included a valid arbitration agreement as to both defendants, the dispute was an arbitrable issue, and the right to arbitration had not been waived); *see also Garcia v. Citigroup, Inc.*, Case No. 1:23-cv-22887-KMM, slip op., at *11 (S.D. Fla. Dec. 22, 2023) (Order on Mot. to Compel Arbitration) (granting motion to compel arbitration where card agreement included written arbitration agreement, dispute involved arbitrable issue, and right to arbitration had not been waived). Because the claims against YATCO are subject to arbitration under the SaaS Agreement, YATCO requests the Court enter a stay of the proceedings against YATCO pending an arbitration decision.

V. **CONCLUSION.**

WHEREFORE, for the foregoing reasons, Defendant, YATCO, respectfully requests the Court enter an Order that:

    A.    Grants YATCO's Motion to Compel Arbitration of the claims in this matter;

    B.    Stays all proceedings as to YATCO pending an arbitration decision; and

    C.    Grants such further relief as the Court deems just and proper.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3)(A), counsel for Movants certifies that counsel conferred with all parties or non-parties who may be affected by the relief sought in this Motion in a good faith effort to resolve the issues raised in the Motion via email, and counsel for Plaintiffs does not agree to the relief requested in this Motion.

        */s/ Roy E. Fitzgerald*
        Roy E. Fitzgerald, Fla. Bar # 856540

Dated: September 4, 2024.

        Respectfully submitted.

        */s/ Roy E. Fitzgerald*
        Roy E. Fitzgerald, Fla. Bar No. 856540
        Gregory S. Weiss, Fla. Bar No. 163430
        Jennifer Perrone, Fla. Bar No. 116823
        e-mail: rfitzgerald@mrachek-law.com
        e-mail: gweiss@mrachek-law.com
        e-mail: jperrone@mrachek-law.com
        Secondary: gdavies@mrachek-law.com;
                    abourget@mrachek-law.com
        MRACHEK, FITZGERALD, ROSE,
        KONOPKA, THOMAS & WEISS, P.A.
        505 South Flagler Drive, Suite 600
        West Palm Beach, FL 33401
        561-655-2250 Telephone // 561-655-5537 Fax
        Counsel for Defendant YATCO, LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on September 4, 2024 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

                                                  /s/ Roy E. Fitzgerald
                                        Roy E. Fitzgerald, Fla. Bar # 856540