UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-20805-KMM

YA MON EXPEDITIONS, LLC,                           )
BLUEBERRY ENTERPRISES, LLC,                        )
MAGNA CHARTA, LLC, PRIDE                            )
CONTRACTING, INC., KIP LAMAR                        )
SNELL, and JUAN GALAN, Individually and            )
on Behalf of All Others Similarly Situated,        )
                                                   )
                        Plaintiffs,                )
                                                   )
        vs.                                        )
                                                   )
ALLIED MARINE, INC., GALATI YACHT                  )
SALES, LLC, HMY YACHT SALES, INC.,                 )
MARINEMAX, INC., NORTHROP &                        )
JOHNSON YACHTS-SHIPS, LLC, FRASER                  )
YACHTS FLORIDA, INC., FRASER                       )
YACHTS CALIFORNIA CORPORATION,                     )
MARINEMAX EAST, INC., ONEWATER                     )
MARINE INC., DENISON YACHTS                         )
INTERNATIONAL, LLC, YACHTING                       )
ASSETS AND OPERATIONS LLC, UNITED                  )
YACHT SALES, LLC, INTERNATIONAL                    )
YACHT BROKERS ASSOCIATION, INC.,                   )
YACHT BROKERS ASSOCIATION OF                       )
AMERICA, INC., CALIFORNIA YACHT                     )
BROKERS ASSOCIATION, INC.,                         )
NORTHWEST YACHT BROKERS                            )
ASSOCIATION, BOATS GROUP, LLC,                     )
PERMIRA ADVISERS LIMITED, PERMIRA                  )
ADVISERS LLC, and YATCO, LLC.                      )
                        Defendants.                )
                                                   )
_____           )

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT YATCO, LLC'S MOTION
TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................4

      A.    The Court Should Decide Whether There Is an Arbitration Agreement
            Between Any Plaintiff or Class Member and YATCO ....................................4

      B.    Plaintiffs Are Not Bound to Arbitrate Their Antitrust Claims Against
            YATCO............................................................................................................6

            1.    Existence and Interpretation of Arbitration Agreement............................6

            2.    Arbitration Agreements Are Binding on or Enforceable Against
                  Non-Signatories in Limited Circumstances Not Present Here ...................7

                  a.    Estoppel/Third Party Beneficiary ....................................................8

                  b.    Agency ............................................................................................9

      C.    There Is No Arbitration Agreement Between Any Plaintiff or Class
            Member and YATCO .....................................................................................10

            1.    Plaintiffs Are Not Bound to the SaaS Agreement by Estoppel ................10

            2.    Listing Brokers Are Not Agents of Plaintiffs for Purposes of the
                  SaaS Agreement.....................................................................................12

      D.    Plaintiffs' Antitrust Claims Are Not Arbitrable ............................................13

      E.    YATCO Failed to Meet its Burden................................................................15

      F.    YATCO Cannot Arbitrate and Litigate at the Same Time ..............................16

      G.    YATCO is Liable as a Co-Conspirator...........................................................17

III.  CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Lashify, Inc.*,
    689 F. Supp. 3d 1146 (M.D. Fla. 2023) ...................................................................................7

*Bazemore v. Jefferson Cap. Sys., LLC*,
    827 F.3d 1325 (11th Cir. 2016) .............................................................................................15

*Calderon v. Sixt Rent a Car, LLC*,
    5 F.4th 1204 (11th Cir. 2021) ...............................................................................................13

*Chemaly v. Lambert*,
    2024 WL 663654 (S.D. Fla. Feb. 16, 2024) .....................................................................7, 13

*Compere v. Nusret Miami, LLC*,
    396 F. Supp. 3d 1194 (S.D. Fla. 2019) ...................................................................................7

*CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc.*,
    201 So. 3d 85 (Fla. Dist. Ct. App. 2015) ...............................................................................5

*Davis v. White*,
    795 F. App'x 764 (11th Cir. 2020) ................................................................................16, 17

*De Gracia v. Royal Caribbean Cruises Ltd.*,
    580 F. Supp. 3d 1217 (S.D. Fla. 2022) ...................................................................................7

*Decurtis LLC v. Carnival Corp.*,
    2020 WL 6079232 (M.D. Fla. July 15, 2020) ........................................................................7

*Etienne v. All Seasons in Naples, LLC*,
    2022 WL 2802697 (M.D. Fla. July 18, 2022) ................................................................12, 15

*Fi-Evergreen Woods, LLC v. Estate of Robinson*,
    172 So. 3d 493 (Fla. Dist. Ct. App. 2015) .............................................................................13

*Germann v. Age Inst. of Fla., Inc.*,
    912 So. 2d 590 (Fla. Dist. Ct. App. 2005) .............................................................................12

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
    561 U.S. 287 (2010) .................................................................................................................5

*Greene v. Peloton Interactive, Inc.*,
    566 F. Supp. 3d 1299 (N.D. Fla. 2021) ...............................................................................5, 8

4859-0973-6163

**Page**

*Gutierrez v. Wells Fargo Bank, NA,*
889 F.3d 1230 (11th Cir. 2018) ............................................................................16

*Hearn v. Comcast Cable Commc'ns, LLC,*
992 F.3d 1209 (11th Cir. 2021) ............................................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
586 U.S. 63 (2019) ..................................................................................................5

*In re K-Dur Antitrust Litig.,*
338 F. Supp. 2d 517 (D.N.J. 2004) ......................................................................18

*Jacocks v. Cap. Com. Real Estate Grp., Inc.,*
310 So. 3d 71 (Fla. Dist. Ct. App. 2021) ...............................................................9

*Jones v. Waffle House, Inc.,*
866 F.3d 1257 (11th Cir. 2017) ......................................................................14, 15

*JPay, Inc. v. Kobel,*
904 F.3d 923 (11th Cir. 2018) ...............................................................................6

*Karseal Corp. v. Richfield Oil Corp.,*
221 F.2d 358 (9th Cir. 1955) ................................................................................17

*Lavigne v. Herbalife, Ltd.,*
967 F.3d 1110 (11th Cir. 2020) .............................................................................5

*Lefco v. United States,*
74 F.2d 66 (3d Cir. 1934) .....................................................................................18

*Marino Performance, Inc. v. Zuniga,*
326 So. 3d 93 (Fla. Dist. Ct. App. 2021) .............................................................16

*Mendez v. Hampton Ct. Nursing Ctr., LLC,*
203 So. 3d 146 (Fla. 2016) .....................................................................................8

*Milgram v. Chase Bank USA, NA,*
72 F.4th 1212 (11th Cir. 2023) ............................................................................10

*Morgan v. Sundance, Inc.,*
596 U.S. 411 (2022) ................................................................................................7

- iii -

**Page**

*New Prime Inc. v. Oliveira*,
   586 U.S. 105 (2019)................................................................................................4

*Palladino v. JPMorgan Chase & Co.*,
   2024 WL 3594569 (E.D.N.Y. July 31, 2024)......................................................14

*Paquin v. Campbell*,
   378 So. 3d 686 (Fla. Dist. Ct. App. 2024) .......................................................7, 8

*Pardo v. Tanning Rsch. Lab'ys, Inc.*,
   996 F. Supp. 1222 (M.D. Fla. 1998)..............................................................9, 10

*Ramos-Barrientos v. Bland*,
   661 F.3d 587 (11th Cir. 2011) .......................................................................9, 10

*SBMH Grp. DMCC v. Noadiam USA, LLC*,
   297 F. Supp. 3d 1321 (S.D. Fla. 2017) ..............................................................4

*Schoendorf v. Toyota of Orlando*,
   2009 WL 1075991 (M.D. Fla. Apr. 21, 2009)...................................................15

*Shea v. BBVA Compass Bancshares, Inc.*,
   2013 WL 869526 (S.D. Fla. Mar. 7, 2013).........................................................6

*Stalley v. Transitional Hosps. Corp. of Tampa*,
   44 So. 3d 627 (Fla. Dist. Ct. App. 2010) .........................................................12

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
   248 F.3d 1109 (11th Cir. 2001) ...................................................................13, 14

*UATP Mgmt., LLC v. Barnes*,
   320 So. 3d 851 (Fla. Dist. Ct. App. 2021) .........................................................5

*United States v. Traveler's Cas. & Surety Co.*,
   2021 WL 10382213 (M.D. Fla. Dec. 17, 2021)..................................................5

*US Iron FLA, LLC v. GMA Garnett (USA) Corp.*,
   660 F. Supp. 3d 1212 (N.D. Fla. 2023)..............................................................9

*Vitale-Renner v. Sixt Rent-A-Car, LLC*,
   2022 WL 18023252 (S.D. Fla. July 5, 2022).....................................................15

4859-0973-6163

**Page**

*WasteCare Corp. v. Harmony Enters., Inc.*,
   822 F. App'x 892 (11th Cir. 2020) .............................................................................6

*Young v. ByteDance Inc.*,
   700 F. Supp. 3d 808 (N.D. Cal. 2023) ......................................................................6

4859-0973-6163

## I. INTRODUCTION

Plaintiffs are owners of pre-owned yachts who allege in this action that multi-listing services, such as YATCO, LLC ("YATCO"), conspired with yacht brokers and industry trade associations to impose and maintain anticompetitive restraints that force pre-owned yacht sellers, such as Plaintiffs, to pay commissions to buyers' brokers and to pay overall commissions at higher rates than those that would have prevailed in a competitive market. YATCO seeks to force Plaintiffs to arbitrate this dispute based on an arbitration clause in an ancillary subscription software agreement (the "SaaS Agreement")[1] purportedly between YATCO and subscribers to its service. Importantly, Plaintiffs would never be subscribers of YATCO. Rather, the subscribers are brokers – YATCO's co-defendants and co-conspirators. YATCO's misguided attempt to apply this arbitration clause to Plaintiffs' claims is based on strained theories of agency and equitable estoppel that are contrary to applicable law and should be rejected.

The SaaS Agreement appears to be the contract between YATCO and boat brokerages for use of YATCO's "YATCO BOSS." To be clear, the SaaS Agreement is not the listing agreement between Plaintiffs and their broker or YATCO. Rather, the agreement is for use of a back-office software system, which by its terms involves "fleet management data integrated with a comprehensive CRM [Customer Relationship Management], sales, and online marketing software solution for industry professionals."[2] YATCO explains that YATCO BOSS is for "yacht brokers,

---

[1]  "SaaS" stands for "Software as a Service" and refers to the provision of software as a subscription service to broker and other marine-related business clients, where the provider manages all the physical and software resources used by the application (defined as "Services" by the SaaS Agreement). The SaaS Agreement is attached in its entirety to Defendant YATCO, LLC's Motion to Compel Arbitration and Stay Proceedings and Incorporated Memorandum of Law ("Motion" or "Mot."). ECF 185, 185-1.

[2]  YATCO, YATCO BOSS, https://www.yatco.com/yatco-boss/ (last visited Sept. 6, 2024).

- 1 -

builders, charter agents, marinas, and other yachting professionals."[3] In other words, YATCO BOSS is not available to the public, and, by definition under the terms of the SaaS Agreement, could not have even been accessed by non-brokers or non-professionals. Nowhere does YATCO contend that any Plaintiff signed, utilized, or was even aware of the SaaS Agreement or its subscription software services. There is not any evidence that Plaintiffs accepted the terms of the SaaS Agreement or that they were even aware of them. In fact, Plaintiffs could not have been Subscribers, since they were not yacht brokers licensing YATCO's software.

Nonetheless, YATCO remarkably still argues that Plaintiffs are bound to arbitrate in accordance with the terms of the SaaS Agreement. However, the terms of the agreement clearly establish that the software agreement signed by YATCO BOSS subscribers would not apply to Plaintiffs' claims relating to the anticompetitive commission fee structure challenged by this Action. First, YATCO's SaaS Agreement limits the arbitration provision to only "DISPUTES ABOUT THIS AGREEMENT AND THE SERVICES PROVIDED BY YATCO." ECF 185-1 at 5. The limited scope of the arbitration agreement is repeated several times in the agreement. *Id.* at 25 ("Claims relating to this Agreement or the Service will be resolved through final and binding arbitration, except as set forth below."). *Id.* at 26 ("Specifically, all claims ***arising out of or relating to the Agreement (including its formation, performance and breach)***, the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration administered by the American Arbitration Association under its Commercial

---

[3]    *Id.*

Arbitration Rules."). Plaintiffs' claims are based on neither the agreement for software usage nor the services provided by YATCO[4] to brokers under that agreement.

Because Plaintiffs never signed any YATCO agreement, it is of utmost importance to recognize that the SaaS Agreement, by its terms, could not apply to them. Under the Miscellaneous portion of the SaaS Agreement, paragraph 16.11 provides:[5]

> ***No Third-Party Beneficiaries. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement***.[6]

The SaaS Agreement plainly provides no basis for excluding Plaintiffs from litigating their claims on a classwide basis in this Court. Further, notwithstanding YATCO's argument to the contrary, it is for the Court, not an arbitrator, to decide the threshold question of whether Plaintiffs entered into an arbitration agreement with YATCO. Plaintiffs are not bound by the SaaS Agreement under any legal theory that might bind parties as non-signatories, and, in any event, YATCO should not be permitted litigate – YATCO remains a Defendant seeking dismissal here – and arbitrate Plaintiffs' claims at the same time. For the reasons set forth below, YATCO's Motion should be denied.

---

[4]   The SaaS Agreement services are outlined in Section 4 of the agreement. ECF 185-1 at 11. None of those services relate to the commission structure or the listing of a particular vessel, and YATCO does not argue that they do.

[5]   Unless otherwise noted, all emphasis is added and citations are omitted.

[6]   Tellingly, this paragraph is not addressed or identified in the body of YATCO's Motion.

## II.    ARGUMENT

YATCO's Motion is wrong in every key respect. First, the Court should decide the "gating" issue of arbitrability, not an arbitrator, which renders the SaaS Agreement's delegation clause entirely beside the point. Second, under Florida law, Plaintiffs are not bound by the arbitration clause, as YATCO cannot establish the existence of a binding arbitration agreement with Plaintiffs. The estoppel and agency theories YATCO attempts to invoke do not provide a basis for binding Plaintiffs to the agreement. Finally, by simultaneously seeking to arbitrate Plaintiffs' claims and litigate the merits of the case on the merits, YATCO has waived any arbitration rights.

### A.    The Court Should Decide Whether There Is an Arbitration Agreement Between YATCO and Any Plaintiff or Class Member

YATCO argues that an arbitrator should decide the threshold issue of whether an enforceable arbitration agreement exists between Plaintiffs and YATCO because there is a delegation clause in the SaaS Agreement's arbitration clause. Mot. at 11-12. That portion provides:

> The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of the Agreement, including, but not limited to any claim that all or any part of the Agreement is void or voidable, or whether a claim is subject to arbitration.

Mot., Ex. A at 43. However, this provision does not give the arbitrator the power to decide whether there is a binding arbitration clause between YATCO and Plaintiffs in the first instance.

A delegation clause is simply a specialized type of arbitration agreement and operates the same way as any other arbitration clause. *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019). "Just as the arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate the dispute, . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about ***that*** matter." *SBMH Grp. DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 1325 (S.D. Fla. 2017) (emphasis in original). Even in the presence of a delegation

- 4 -

clause, courts should only order arbitration where the court is satisfied that the formation of the parties' arbitration agreement is not in dispute. *Greene v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1299, 1302-03 (N.D. Fla. 2021). There is a difference between a challenge to contract validity and contract formation. *UATP Mgmt., LLC v. Barnes*, 320 So. 3d 851, 856 (Fla. Dist. Ct. App. 2021). Questions of contract formation, *i.e.*, whether a contract exists, is a question for the court. *Id.*; *CT Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc*., 201 So. 3d 85, 92-93 (Fla. Dist. Ct. App. 2015) ("Thus, in the absence of an agreement to allow the arbitrator to decide the dispute, the arbitrator has no authority to determine anything."); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) ("To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce. Where there is no provision validly committing them to an arbitrator, these issues typically concern the scope of the arbitration clause and its enforceability. In addition, ***these issues always include whether the clause was agreed to***, and may include when that agreement was formed.").

None of the cases cited by YATCO hold otherwise. The Supreme Court in *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-69 (2019) did not hold that arbitrators should rule on whether the parties formed an agreement to arbitrate. Following the *Henry Schein* decision, courts have universally held that it is the role of the courts to determine whether the parties formed an agreement to arbitrate. *See Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120 n.7 (11th Cir. 2020) ("How does one go about delegating the question of equitable estoppel? By definition, there is no contract, which is, after all, why one of the parties is demanding equitable estoppel. So, if there is no contract, how can the issue of equitable estoppel be delegated in the first place?"); *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 812 (N.D. Cal. 2023) ("And a delegation provision can be

- 5 -

invoked only if the parties to the dispute *agreed* that their disagreement about arbitrability would be decided by the arbitrator.") (emphasis in original)) The other cases cited by YATCO do not address whether the court or arbitrator should resolve whether the parties entered into an agreement to arbitrate in the face of a delegation clause. Rather, in each case, it was undisputed that the parties had agreed to the arbitration provisions in question. *See WasteCare Corp. v. Harmony Enters., Inc.*, 822 F. App'x 892, 895-96 (11th Cir. 2020); *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018); *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *3-4 (S.D. Fla. Mar. 7, 2013).

The threshold issue here is whether Plaintiffs agreed to the arbitration provision in the SaaS Agreement in the first instance, which is plainly not an issue for the arbitrator to decide. It is properly before the Court to determine whether Plaintiffs are party to the SaaS Agreement (*i.e.*, whether they agreed to or are otherwise bound by the terms of the SaaS Agreement), which includes the arbitration clause YATCO wishes to enforce. Plaintiffs cannot be forced to arbitrate the question of whether they agreed to arbitrate pursuant to a purported contract they never signed, did not know about, and could not have discovered.

### B.    Plaintiffs Are Not Bound to Arbitrate Their Antitrust Claims Against YATCO

#### 1.    Existence and Interpretation of Arbitration Agreement

Under Florida law, as identified in the SaaS Agreement, "courts are required to consider three elements when ruling on a motion to compel arbitration: 1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate was waived." *Paquin v. Campbell*, 378 So. 3d 686, 690 (Fla. Dist. Ct. App. 2024). The issue of whether an agreement to arbitrate exists in the first instance is a question for the Court. *Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1200 (S.D. Fla. 2019). Federal courts apply ordinary state law

principles that govern the formation of contracts to determine whether there is a valid agreement to arbitrate. *Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1154 (M.D. Fla. 2023). A party plainly cannot be bound by an arbitration clause in a contract to which they did not assent. *Id.* The second and third determinations of whether the parties have agreed to submit a specific dispute to arbitration and whether a party has waived its right to arbitrate are also questions of law subject to judicial resolution. *Id.* at 1152-53, 1159. "Generally, this determination requires the district court to apply standard principles of state contract law." *Id.* at 1153, 1159. Traditional contract interpretation principles dictate that these are questions of law, and courts decide by reading the words of the contract in the context of construing the contract to effectuate the parties' intent. *Chemaly v. Lambert*, 2024 WL 663654, at \*9 (S.D. Fla. Feb. 16, 2024); *Decurtis LLC v. Carnival Corp.*, 2020 WL 6079232, at \*4 (M.D. Fla. July 15, 2020).

The federal policy favoring arbitration does not apply to disputes over the formation of the arbitration agreement, its enforceability, application to the parties at bar, or who is bound by the agreement. *De Gracia v. Royal Caribbean Cruises Ltd.*, 580 F. Supp. 3d 1217, 1221 (S.D. Fla. 2022). The Federal Arbitration Act's policy favoring arbitration is to make arbitration agreements as enforceable as other contracts, but not more so. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

> **2.    Arbitration Agreements Are Binding on or Enforceable Against Non-Signatories in Limited Circumstances Not Present Here**

"Under Florida law, '[t]hird persons who are not parties to an arbitration agreement generally are not bound by the agreement.'" *Greene*, 566 F. Supp. 3d at 1303 (quoting *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016)). "Non-signatories [to a contract

can] be bound to arbitration agreements under theories of 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Paquin*, 378 So. 3d at 690.

YATCO does not argue Plaintiffs are bound by the SaaS Agreement on the bases of incorporation by reference, assumption, or some form of veil-piercing/alter ego theory. Instead, YATCO argues that equity bars Plaintiffs from refusing to arbitrate under a theory of equitable estoppel, and that agency principles bind Plaintiffs to the SaaS Agreement's arbitration provision. As discussed below in Sections II.C.1 and 2, both theories fall flat.

### a.        Estoppel/Third Party Beneficiary

Equitable estoppel binds a non-signatory to a contract only under two situations. First, if a non-signatory sues a signatory for breach of the contract, the non-signatory is estopped from denying the arbitration clause in the contract. *Id.* Second, a non-signatory can be estopped from denying the arbitration provision in the contract when the non-signatory has directly benefitted from the contract. *Id.* at 691. Direct benefits are benefits flowing directly from the agreement. On the other hand, "indirect benefits from a contract, which are insufficient to compel a nonsignatory to arbitrate, are those where the nonsignatory exploits the contractual relationship of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Id.* (cleaned up).

Relatedly, under the third-party beneficiary doctrine, non-signatories to a contract may be bound to an arbitration provision if their claims would not exist but for the contract. *Greene*, 566 F. Supp. 3d at 1303. In other words, a plaintiff cannot be bound to a contract he did not sign where his claims do not specifically arise from the contact – even if he is a third-party beneficiary of the contract. *Jacocks v. Cap. Com. Real Estate Grp., Inc.*, 310 So. 3d 71, 73 (Fla. Dist. Ct. App. 2021). The exception to that rule is that if the third-party beneficiary sues to enforce the contract between other parties, he will be bound by an arbitration clause in the contract. However, if the plaintiff

- 8 -

brings a claim other than to enforce the contract, he will not be bound by the arbitration clause. *Id.* (realtor's legal malpractice claim against attorney not subject to arbitration clause in retainer agreement between attorney and client).

### b.      Agency

Under Florida law, a principal is only bound to a contract entered into by an agent if the agent had the authority to enter into the contract on behalf of the principal. *US Iron FLA, LLC v. GMA Garnett (USA) Corp.*, 660 F. Supp. 3d 1212, 1220 (N.D. Fla. 2023). **Actual** agency occurs when a principal specifically authorizes its agent to take certain actions. *Pardo v. Tanning Rsch. Lab'ys, Inc.*, 996 F. Supp. 1222, 1225 (M.D. Fla. 1998). The essential elements to establish an actual agency relationship are: i) acknowledgment by the principal that the agent will act for him; ii) acceptance by the agent of the undertaking; and iii) control by the principal over the agent's actions. *US Iron*, 660 F. Supp. 3d at 1221. Under general principles of agency, authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestation of consent to him. *Ramos-Barrientos v. Bland*, 661 F.3d 587, 600 (11th Cir. 2011).

> Authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to accomplish it, but an agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestations and the facts as he knows or should know them at the time he acts.

*Id.* (cleaned up)

**Apparent** authority arises "when the principal causes or allows others to believe that the individual has authority to conduct the act in question on the principal's behalf." *Pardo*, 996 F. Supp. 1222 at 1225-26. Apparent authority under Florida law is a form of estoppel. To prove apparent authority, the litigant must show: "(a) a representation by the purported principal, (b) a

reliance on that representation by a third party, and (c) a change in position by the third party in reliance on the representation." *Milgram v. Chase Bank USA, NA*, 72 F.4th 1212, 1220-21 (11th Cir. 2023). "The focus is on the appearance created by the ***principal***, and not the appearance created by the ***agent***." *Pardo*, 996 F. Supp. 1222 at 1226 (emphasis in original).

> **C.      There Is No Arbitration Agreement Between Any Plaintiff or Class Member and YATCO**

YATCO claims that Plaintiffs and class members are bound by the arbitration agreement in its SaaS Agreement because their listing brokers "had to" execute the SaaS Agreement in order to list their boats for sale on YATCO. Mot. at 11. As YATCO acknowledges, Plaintiffs are not parties to the SaaS Agreement and YATCO has only shown that Plaintiffs' brokers ***may be*** parties to the SaaS Agreement, acknowledging that it cannot identify Plaintiffs' brokers or even whether Plaintiffs' brokers listed the vessels in issue on YATCO. *See* Mot. at 13, n.3.

YATCO does not explain how Plaintiffs are supposedly bound to the arbitration provision in the SaaS Agreement beyond the bare statement that they may have agreed to list their boat with a broker and the broker may have chosen to list the boat on Yatco.com. Upon examination, this argument quickly unravels.

> **1.      Plaintiffs Are Not Bound to the SaaS Agreement by Estoppel**

YATCO argues that Plaintiffs are bound to the SaaS Agreement because "(i) Plaintiffs, through their brokers, would have had to enter into an SaaS Agreements [sic] to list their boats through their agent-brokers; and, (ii) Plaintiffs cannot rely on the listing agreement they entered into in order to prosecute their claims in this Action, but then disclaim the terms of such agreements." Mot. at 13.

A fatal impediment to YATCO's first contention, that Plaintiffs would have had to have entered into SaaS Agreements to list their boats through their listing brokers, is the text of the

Agreement itself. YATCO argues "[t]he Subscriber, individual or entity listing a particular boat for a seller, would have had to execute a SaaS Agreement on behalf of the seller, with YATCO in order to list the boat." Mot. at 10. Therein lies the problem with YATCO's argument. The SaaS Agreement is signed by subscriber brokers, not by sellers, *i.e.* not by a Plaintiff or any other class member. Paragraph 16.11 of the SaaS Agreement provides:

> No Third-Party Beneficiaries. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

Mot., Ex. A at 48. Thus, by its own terms, Plaintiffs have no "right, benefit, or remedy" under the SaaS Agreement because they are not signatories to the SaaS Agreement. Plaintiffs have no claim "arising out of or relating to the Agreement" because, by definition, they have no rights under the SaaS Agreement. Plaintiffs could not have agreed to arbitrate claims the SaaS Agreement itself says they don't have because they are not signatories to the SaaS Agreement.

Even in the absence of this paragraph, Plaintiffs and class members would not be bound by the arbitration provision in the SaaS Agreement by way of third-party beneficiary or estoppel. First, Plaintiffs are not seeking to enforce any term of the SaaS Agreement, nor do Plaintiffs' claims arise from any breach of the SaaS Agreement. Indeed, no one has alleged that either YATCO or a broker failed to perform any term of the SaaS Agreement. Plaintiffs did not know about the existence of this agreement until it was submitted as part of YATCO's Motion. There is nothing in the SaaS Agreement that addresses what commissions a boat seller should or should not pay upon the sale of their boat. Moreover, there is no direct benefit of the SaaS Agreement that flows to any Plaintiff, inasmuch as the benefits of the SaaS Agreement is the use of YATCO's subscription software system as part of the broker's business. At best, the sale of the owner's boat

- 11 -

is an indirect benefit of the SaaS Agreement, which does not suffice to bind Plaintiffs to the arbitration agreement. *See Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. Dist. Ct. App. 2005) ("A nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract.").

> **2.      Listing Brokers Are Not Agents of Plaintiffs for Purposes of the SaaS Agreement**

There is no basis for any Plaintiff to be bound to the SaaS Agreement by virtue of a broker acting as agent for one of the Plaintiffs. It is the burden of the party seeking to compel arbitration to establish that an agreement to arbitrate exists. *Etienne v. All Seasons in Naples, LLC*, 2022 WL 2802697, at *3 (M.D. Fla. July 18, 2022) ("Defendants have failed to carry their burden of proving the existence of an agreement to arbitrate between [plaintiff] and defendants."). YATCO has included nothing in the record that would reasonably suggest that the listing agreements between Plaintiffs and their brokers somehow gave the brokers authority to bind a Plaintiff to YATCO's SaaS Agreement and arbitration clause. It simply makes the conclusory argument that by virtue of the broker listing their yachts on YATCO's MLS, Plaintiffs were bound by the SaaS Agreement. Arbitration is a matter of contract, not conjecture. Thus, the facts of this case are much closer to the facts in *Stalley v. Transitional Hosps. Corp. of Tampa*, 44 So. 3d 627 (Fla. Dist. Ct. App. 2010) (principal expressly authorized agent to sign documents containing arbitration agreement) than *Fi-Evergreen Woods, LLC v. Estate of Robinson*, 172 So. 3d 493, 496 (Fla. Dist. Ct. App. 2015) (arbitration agreement not binding on purported "principal" because they "never represented that the person who signed the arbitration agreement in that case was authorized to do [so]").

- 12 -

4859-0973-6163

Further, there is nothing in YATCO's Motion to suggest that they are claiming any Plaintiff's broker had apparent authority to agree to arbitrate their antitrust claims under the SaaS Agreement. As is explained above, apparent authority depends upon the principal holding the agent out as having authority to bind the principal. There is nothing in YATCO's Motion to suggest it had any interaction whatsoever with any Plaintiff that would lead YATCO to reasonably believe any broker could bind any Plaintiff to do anything.

> ### D.   Plaintiffs' Antitrust Claims Are Not Arbitrable

Under Florida law, the meaning of an arbitration provision is a matter of contractual interpretation and turns on the intent of the parties to the contract, as manifested in the language of the arbitration provision and contract itself. *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1208 (11th Cir. 2021). Arbitration agreements for disputes "arising out of or relating to" a contract are particularly problematic when the pending dispute concerns tort claims alleged to be "related to" a contract with an arbitration clause. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001). In determining whether a dispute "arises out of" the underlying contract for arbitration purposes, the court considers whether the dispute in question was an immediate, foreseeable result of the performance of contractual duties. *Calderon*, 5 F.4th at 1213; *Chemaly*, 2024 WL 663654, at *11. For a dispute to "arise out of" or "relate to" the underlying contract, there must be some direct relationship between the dispute and the duties specified in the contract. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021). "Disputes that are not related – with at least some directness – to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." *Telecom Italia*, 248 F.3d at 1116.

In addition to the fact that Plaintiffs never agreed to arbitrate with YATCO, their antitrust claims against YATCO and the remaining Defendants are not arbitrable. The arbitration clause in the SaaS Agreement provides for arbitration of all claims "arising out of or relating to" the SaaS Agreement. Plaintiffs' and the class' antitrust claims are not an immediate and foreseeable result of the performance of contractual duties under the SaaS Agreement. *See Palladino v. JPMorgan Chase & Co.*, 2024 WL 3594569, at *13-14 (E.D.N.Y. July 31, 2024) (finding and discussing cases where antitrust claims held not to be encompassed by arbitration clauses). The SaaS Agreement, generally, provides for brokers' use of YATCO's software system in connection with their respective businesses. There is nothing in the SaaS Agreement that has anything to do with how much commission a boat seller is required to pay or how that commission is to be divided by the seller's broker and buyer's broker. To the best of Plaintiffs' knowledge, there is no dispute whatsoever that either YATCO or any broker failed to perform their respective duties under the SaaS Agreement. As a result, Plaintiffs' antitrust claims do not "arise out of" or "relate to" the SaaS Agreement.

The issue of arbitrability should be decided by the Court. Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017). It is true that the language in this SaaS Agreement is practically identical to the delegation clause in *Jones*, which the Eleventh Circuit found "clearly and unmistakably evinces the parties' intent to arbitrate all gateway issues."[7] *Id.* However, in *Jones* there was no question that the plaintiff had actually agreed

---

[7]   *Jones* agreement **did not** have the "No Third Party Beneficiary" language in the SaaS Agreement stating that the agreement provides no legal rights to any other parties. For the reasons set forth above, that language raises additional questions as to whether Plaintiffs are bound by the SaaS Agreement arbitration provision.

to arbitrate claims against Waffle House. *Id.* at 1260-61, 1263. The issue in *Jones* was whether the delegation clause was unconscionable. *Id.* at 1264-67. Inasmuch as Plaintiffs never agreed to arbitrate anything with YATCO, "gateway" issue or not, it would be appropriate for the Court to rule as to the arbitrability of Plaintiffs' claims as an additional reason why YATCO's Motion should be denied.

### E.     YATCO Failed to Meet Its Burden

As the moving party, it is YATCO's burden to prove the existence of a written arbitration contract between the parties. *See Etienne*, 2022 WL 2802697, at \*3 ("Defendants have failed to carry their burden of proving the existence of an agreement to arbitrate between [plaintiff] and defendants."); *Vitale-Renner v. Sixt Rent-A-Car, LLC*, 2022 WL 18023252, at \*7 (S.D. Fla. July 5, 2022) (same); *Schoendorf v. Toyota of Orlando*, 2009 WL 1075991, at \*7 (M.D. Fla. Apr. 21, 2009) ("Because Defendant bears the burden to prove the existence of the agreement, the Court must look to the other evidence produced by Defendant to determine if this burden has been met."); *see also Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (holding that "a summary judgment-like standard is appropriate" for a motion to compel arbitration).

Throughout its Motion, YATCO engages in rank speculation about whether Plaintiffs worked with a broker that had signed the SaaS Agreement, and even as to whether Plaintiffs' vessels were ever listed on YATCO. To illustrate:

- "YATCO does not know the identity of the alleged brokers" (Mot. at 2; *see also id.* referring to "unknown brokers");

- "YATCO does not know the identity of the brokers that allegedly listed the four putative class representatives' boats" on an MLS (*Id.* at 7);

- "[A] valid, signed written agreement with an arbitration provision ***would exist if a boat was listed*** on YATCO's website (*Id.* at 10); and

- "YATCO is unaware of whether the boats were actually listed on its website." (*Id.* at 13 n.3).

For the reasons demonstrated above, Plaintiffs submit that the law of agency and estoppel foreclose the possibility of any relief to YATCO. Along with lacking *legal* merit, YATCO has not come close to meeting its *factual* burden, given the fundamentally speculative nature of its assertions.

**F.       YATCO Cannot Arbitrate and Litigate at the Same Time**

Under Florida law, a party waives its right to compel arbitration by taking actions inconsistent with that right, including active participation in a lawsuit governed by the arbitration clause. *Marino Performance, Inc. v. Zuniga*, 326 So. 3d 93, 96 (Fla. Dist. Ct. App. 2021). The purpose of the waiver doctrine is to prevent litigants from abusing the judicial process. *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).

A motion to dismiss that does not address the merits is not necessarily inconsistent with an agreement to arbitrate, but a motion to dismiss addressed to the merits that would resolve all allegedly arbitrable claims can be inconsistent with an intent to arbitrate. *Davis v. White*, 795 F. App'x 764, 769 (11th Cir. 2020).

Here, YATCO is simultaneously moving to compel arbitration and to dismiss Plaintiffs' claims on the merits, being a party to Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Joint Motion to Dismiss"). *See* ECF 178, at 4 n.4. YATCO has to decide whether it is going to attempt to arbitrate or litigate the merits of Plaintiffs' claims in this litigation. The Court's Paperless Order granting YATCO leave to file the within Motion, ECF 183, noted that YATCO had not waived its right to arbitrate by joining the pending Joint Motion to Dismiss since the Court had not yet ruled on the Motion. "Thus, it is reasonable that YATCO joined in the motion to dismiss in an abundance of caution." *Id.*

- 16 -

The Court's prior ruling on waiver was based upon the procedural posture of the case as of the time Defendants filed their Joint Motion to Dismiss. The procedural posture of the case, however, has changed since Defendants filed their Joint Motion to Dismiss. YATCO now has on file its own Motion in addition to its continuing to litigate the Joint Motion to Dismiss. YATCO cannot both move to dismiss and move to compel arbitration simultaneously and see which process gives it the more favorable result. YATCO has to choose which course it is going to follow. If it is going to pursue arbitration, is must withdraw from the Joint Motion to Dismiss. If it is going to continue to be a part of the Joint Motion to Dismiss, it must withdraw its current Motion.

## G.   YATCO is Liable as a Co-Conspirator

In seeking to move the claims against it into arbitration, YATCO also presents a false dichotomy, suggesting Plaintiffs' claims must either be arbitrated or dismissed. Specifically, YATCO argues that (a) if Plaintiffs' vessels were listed on YATCO, their claims are subject to arbitration, or (b) if their boats were not listed on the website, this would be grounds for dismissal. Mot. at 13 n.3, 14. While YATCO's argument under (a) is unpersuasive is for all the reasons discussed above, the latter argument under (b) is wrong as a matter of antitrust law. It is well-established that in an antitrust conspiracy case, there is no requirement that a defendant must have a direct relationship with a plaintiff in order for liability to attach. *See Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 363 (9th Cir. 1955) (relief under antitrust laws "is not confined to persons in privity with the wrongdoer"). In other words, "a co-conspirator is liable for all acts committed in furtherance of a conspiracy." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 538-39 (D.N.J. 2004) (citing *Lefco v. United States*, 74 F.2d 66, 68-69 (3d Cir. 1934). YATCO's alternative suggestion that it may be entitled to dismissal is entirely without merit, as well as being inconsistent with an intent to arbitrate.

- 17 -

## III.    CONCLUSION

For the reasons discussed above, Plaintiffs request that YATCO's Motion be denied in its

entirety.

DATED:  September 9, 2024                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           PAUL J. GELLER
                                           Florida Bar No. 984795
                                           MARK J. DEARMAN
                                           Florida Bar No. 982407
                                           STUART A. DAVIDSON
                                           Florida Bar No. 0084824
                                           LINDSEY H. TAYLOR
                                           Florida Bar No. 1027908


                                           **Mark J. Dearman**
                                           MARK J. DEARMAN

                                           225 NE Mizner Boulevard, Suite 720
                                           Boca Raton, FL  33432
                                           Telephone:  561/750-3000
                                           pgeller@rgrdlaw.com
                                           mdearman@rgrdlaw.com
                                           sdavidson@rgrdlaw.com
                                           ltaylor@rgrdlaw.com

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           DAVID W. MITCHELL
                                           ARTHUR L. SHINGLER III
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
                                           davidm@rgrdlaw.com
                                           ashingler@rgrdlaw.com

4859-0973-6163

PODHURST ORSECK, P.A.
LEA P. BUCCIERO (FBN 84763)
RICARDO M. MARTINEZ-CID (FBN 383988)
MATTHEW WEINSHALL (FBN 84783)
One SE 3rd Avenue, Suite 2300
Miami, FL  33131
Telephone:  305/358-2800
lbucciero@podhurst.com
rmartinez-cid@podhurst.com
mweinshall@podhurst.com
RMCTeam@podhurst.com

BONI, ZACK & SNYDER LLC
MICHAEL J. BONI (*pro hac vice*)
JOSHUA D. SNYDER (*pro hac vice*)
JOHN E. SINDONI (*pro hac vice*)
BENJAMIN J. EICHEL (*pro hac vice*)
15 St. Asaphs Road
Bala Cynwyd, PA  19004
Telephone:  610/822-0200
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com
beichel@bonizack.com

*Interim Co-Lead Class Counsel*

GALLAGHER & KENNEDY, P.A.
KEVIN D. NEAL (*pro hac vice*)
WILLIAM F. KING (*pro hac vice*)
KENNETH N. RALSTON (*pro hac vice*)
2575 East Camelback Road
Phoenix, AZ  85016-9225
Telephone:  602/530-8000
kevin.neal@gknet.com
bill.king@gknet.com
ken.ralston@gknet.com

- 19 -

NAPOLI SHKOLNIK PLLC
HUNTER SHKOLNIK (*pro hac vice*)
REBECA MARTINEZ
NESTOR D. GALARZA (*pro hac vice*)
1302 Avenida Ponce de León
Santurce, Puerto Rico  00907
Telephone:  787/493-5088
hunter@nsprlaw.com
rmartinez@nsprlaw.com
ngalarza@nsprlaw.com
* Napoli Shkolnik is a registered tradename for
NS PR Law Services, LLC.
A Puerto Rican Limited Liability Corporation

NAPOLI SHKOLNIK PLLC
SALVATORE C. BADALA (*pro hac vice*)
400 Broadhollow Road, Suite 305
Melville, NY  11747
Telephone:  212/397-1000 Ext. 1045
sbBadala@napolilaw.com

GLANCY PRONGAY & MURRAY LLP
LEE ALBERT
BRIAN D. BROOKS
230 Park Avenue, Suite 358
New York, NY  10169
Telephone:  212/682-5340

*Members of Plaintiffs' Executive Committee*

- 20 -

4859-0973-6163