UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-20805-KMM/Reid

YA MON EXPEDITIONS, LLC, BLUEBERRY
ENTERPRISES, LLC, MAGNA CHARTA, LLC,
PRIDE CONTRACTING, INC., KIP LAMAR
SNELL, and JUAN GALAN, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

ALLIED MARINE, INC., GALATI YACHT
SALES, LLC, HMY YACHT SALES, INC.,
MARINEMAX, INC., NORTHROP & JOHNSON
YACHTS-SHIPS, LLC, FRASER YACHTS
FLORIDA, INC., FRASER YACHTS
CALIFORNIA CORPORATION, MARINEMAX
EAST, INC., ONEWATER MARINE INC.,
DENISON YACHTS INTERNATIONAL, LLC,
YACHTING ASSETS AND OPERATIONS LLC,
UNITED YACHT SALES, LLC,
INTERNATIONAL YACHT BROKERS
ASSOCIATION, INC., YACHT BROKERS
ASSOCIATION OF AMERICA, INC.,
CALIFORNIA YACHT BROKERS
ASSOCIATION, INC., NORTHWEST YACHT
BROKERS ASSOCIATION, BOATS GROUP,
LLC, PERMIRA ADVISERS LIMITED,
PERMIRA ADVISERS LLC, and YATCO, LLC.

        Defendants.
_____/

**JOINT PROTOCOL REGARDING DISCOVERY OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION**

    Pursuant to a stipulation by and between Plaintiffs and Defendants in the above-captioned action and their respective counsel of record, and to promote a "just, speedy, and inexpensive determination" of this action as required by the Federal Rules of Civil Procedure and other Federal and Local Rules, as applicable, this Court hereby enters the following discovery and document production protocol ("ESI Protocol"):

**I.     PURPOSE**

This stipulated ESI Protocol governs the parties in the above-captioned case ("Parties" and individually, "Party"), whether they are currently involved or become so in the future, and any related actions that may later be consolidated with these cases (collectively, the "Litigation"); specifies the form in which the Parties shall be required to produce discoverable information, including hard-copy and electronically stored information ("ESI"), for use in the above-captioned matter; and is a supplement to the Protective Order, [ECF No. 209], entered by the Court on December 10, 2024 (the "Protective Order"). Nothing in this ESI Protocol is intended to expand or limit the Parties' obligations or the Protective Order. To the extent a Party identifies discoverable ESI sources that are not adequately covered by the technical specifications in this ESI Protocol or reasonably believes that compliance with this ESI Protocol imposes an undue burden with respect to any documents or data to be produced in the Litigation, the Parties shall promptly meet and confer in an effort to resolve the issue(s) and modify this ESI Protocol, as necessary.

Nothing in this ESI Protocol shall be construed to affect the admissibility of any document, data, or discoverable information. Pursuant to the terms of this ESI Protocol, any Party's disclosure of information regarding search processes and ESI practices shall not constitute a waiver, by any Party, of any objection to the production of particular ESI, or any document or data, including as to relevance, discoverability, burden, proportionality, accessibility, admissibility, or privilege, nor does it constitute a waiver of any right to request discovery by any Party. All objections to the authenticity or admissibility of any ESI, document, or data are preserved and may be asserted at any reasonable time. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of irrelevant information or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, doctrine, or extension thereof.

II.   **PRESERVATION**

The Parties have taken and will continue to take reasonable and proportional steps to preserve information relevant to the Litigation. The Parties' preservation obligations are governed by the Federal Rules of Civil Procedure.

III.   **IDENTIFICATION OF RESPONSIVE DOCUMENTS**

The Parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to endeavor to reach an agreement on search and culling methods used to identify responsive information. The Parties will meet and confer within a reasonable period of time after entry of this ESI Protocol regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (e.g., search terms, technology-assisted review, predictive coding). To the extent short message format communications, such as those from mobile devices or collaborative tools (e.g., text messages, WhatsApp, Slack, iMessage, Teams, G Chat, etc.) contain relevant and responsive information, the relevant Parties will meet and confer to identify proportional mechanisms and parameters for the collection, review, and production of responsive text or other types of short message formats or chats. If a producing Party intends to use the negotiated search terms to cull potentially responsive short message format communications, relevant and responsive short message format communications will be produced in 12-hour increments. Redactions may be applied to privileged portions of a conversation. The Parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

A.   **Electronic Sources**

The Parties will meet and confer within a reasonable period of time after entry of this ESI Protocol to disclose and discuss the custodial and non-custodial data sources likely to contain

responsive information. The Parties will identify and describe any relevant electronic systems and storage locations identified through reasonable investigation.

**B.     Identification of Custodians**

In connection with the Parties' meet and confer efforts, the Parties shall conduct a reasonable investigation and identify persons identified through that investigation whose files are likely to contain documents and ESI relating to the subject matter of this Litigation. This will include, to the extent practicable, a description of each proposed custodian's job title and a brief description of such person's responsibilities (including dates of employment by the applicable Party). To the extent they exist, the Parties will expedite the production of organizational charts to facilitate the identification of appropriate custodians. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such requests.

**C.     Easily-Targeted Responsive Documents**

Documents and categories of documents that are relevant to this action, responsive to a Party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a Party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (e.g., analytics, predictive coding, technology-assisted review). Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below and the Parties shall meet and confer regarding any proposed deviation.

**D.     Search Terms**

If a producing Party intends to use search terms to cull potentially responsive ESI, the producing Party shall use the process identified herein and shall meet and confer regarding any proposed deviation. The producing Party shall provide a list of the proposed search terms it intends

to use to the receiving Party. The list shall contain search terms that the producing Party believes would lead to the identification of relevant documents and, to the extent reasonably possible, shall be crafted with input from appropriate sources where necessary to identify appropriate nomenclature, code words, etc. The Parties shall meet and confer regarding any disputes over the disclosed search terms. Upon receipt of the proposed search terms, the receiving Party shall provide any additional search terms that it believes are necessary to identify responsive documents.

If a producing Party claims burden with respect to modified and/or additional search terms proposed by the receiving Party or claims that their proposed terms are sufficient without the proposed modifications or additions, the producing Party shall provide a hit report that, to the extent reasonably practicable, shall include: (i) the number of documents with hits for each term; (ii) the number of documents with hits for each term only (i.e., with no hits for any other term); (iii) the number of documents with hits for each term, plus family members; and (iv) the total number of documents that hit on the search terms (with and without family members). The Parties agree to meet-and-confer as necessary regarding whether hit reports should include undisputed terms or only disputed terms. The Parties will raise any unresolved issues with the Court, if necessary.

The Parties shall meet and confer to resolve disagreements over the search terms or their application. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall present the dispute to the Court pursuant to the Court's rules and procedures.

      E.    **Use of Technology-Assisted Review or Other Technology-Based Analytics to Cull Unstructured ESI**

If a producing Party intends to use technology-assisted review ("TAR") or other technology based analytics to cull or otherwise limit the volume of ESI subject to review or production, the producing Party must notify the receiving Party prior to use. Upon request, the

relevant Parties will meet and confer regarding the proposed process. To the extent the Parties have a dispute regarding use of TAR, the Parties should be prepared to submit promptly such a dispute to the Court for resolution.

**IV.     PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT**

Hard-copy documents should be scanned as Group IV single-page TIFF images (300 DPI) with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file for such hard-copy documents should contain at least the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records), consistent with how they are maintained in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**V.     PRODUCTION OF ESI**

    **A.     Format**

Unless specifically addressed elsewhere in this ESI Protocol, the Parties will produce ESI as black-and-white, Group IV single-page TIFF images (300 DPI), spreadsheet (e.g., Microsoft Excel (.xls), and .csv files and presentation type files (e.g., .ppt), audio, photo, graphic images, and video files (e.g., .wav or .mpeg files), and Microsoft Access files, shall be produced in native format. Documents should be imaged in such a way as to capture all content, including tracked changes or comments. With respect to short message format communications (e.g., text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, etc.), the relevant Parties will meet and confer to

identify proportional mechanisms and parameters for the collection, review, and production of responsive text or other types of short message formats or chats. Short message format communications will be produced in Relativity Short Message Format ("RSMF") or a functionally equivalent form with metadata sufficient to enable the preservation of the conversation, including a thread identifier (e.g., a conversation or thread ID), sender information, recipient information, date, and timestamp. If a producing Party intends to use the negotiated search terms to cull potentially responsive short message format communications, relevant and responsive short message format communications will be produced in 12-hour increments. Redactions may be applied to privileged portions of a conversation. To the extent short message format communications cannot be produced in a reasonably useable format, the relevant Parties shall meet and confer to address the identification, production, and production format of such content. To the extent possible, all ESI should be produced with a delimited, database load file that contains the metadata fields listed in **Appendix 1**, attached hereto. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced, or would be burdensome to provide, nothing herein shall require any Party to extract, capture, collect, or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with this ESI Protocol. An .opt image cross-reference file should also be provided for all TIFF images. Specifications for the load files are listed in **Appendix 2**. TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF/JPG image. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential

designation and text stating the document has been produced in native format should also be provided. No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool. If documents requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that a Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the Parties should meet and confer in good faith.

    **B.**    **Deduplication**

Each Party shall make reasonable efforts to globally deduplicate exact duplicate documents within that Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 or SHA-1 hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall not withhold near-duplicates from production without meeting and conferring on this issue. The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production.

C. **Email Threading**

The Parties agree that a producing Party may use analytics technology to identify email threads and may use such technology to reduce the overall amount of ESI and documents reviewed. However, the Parties disagree as to whether a producing Party must produce all relevant emails, including lesser-included emails, and intend to raise this issue with the Court.

D. **Metadata**

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in **Appendix 1**, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that do not conform to the metadata listed in **Appendix 1**, the Parties will meet and confer as to the appropriate metadata fields to be produced.

E. **Embedded Objects**

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

F. **Attachments**

The Parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The Parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent email.

With respect to materials linked in documents and emails that are available for discovery purposes, the relevant Parties will meet and confer to determine the appropriate methods for, and prior to, collection and production. To the extent a dispute arises with respect to the treatment

9

and/or production of such materials, the relevant Parties agree to work in good faith to reach a practicable resolution.

### G. Compressed File Types

Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### H. Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer to determine the most appropriate and cost-effective production format, which may include an export of data.

### I. Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

### J. Foreign Language Documents

To the extent that documents are produced that contain languages other than English, in whole or in part, the producing Party shall produce each such document in the original language or languages in which it was written when collected. The producing Party has no obligation to create a translation of the documents or any portion thereof. The Parties will meet and confer concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

### K. Redactions

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the producing Party

can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

### L. Production of Privilege Logs

The producing Party shall have a period of 45 days to produce a privilege log following the service of: (i) any interrogatory response or document production from which some information or documents are withheld on the basis of such privilege or protection; or (ii) the response to the request for production if all responsive documents are being withheld on the basis of such privilege or protection.

### M. Exclusions from Logging Privileged Documents

The following categories of documents do not need to be contained in a producing Party's privilege log, unless good cause exists to require that a Party do so:

1. Information generated before the beginning of the relevant discovery period eventually agreed to by the Parties.

2. Any communications dated after February 29, 2024, exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts.

3. Any privileged materials or work product created after February 29, 2024, by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts.

## VI. MISCELLANEOUS

### A. Limitations and Waiver

Nothing in this ESI Protocol shall be deemed to constitute a waiver of any objections a producing Party may have with respect to any document or discovery request. The Parties do not waive any objections as to the discoverability, authenticity, admissibility, or confidentiality of documents or ESI.

11

Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.

      **B.**      **Non-Party Discovery**

Any Party that issues a non-Party subpoena shall include a copy of this ESI Protocol as part of the subpoena but need not require that the non-Party produce documents in accordance with the specifications set forth herein. The Party issuing the non-Party subpoena is responsible for producing to all other Parties any documents obtained pursuant to that non-Party subpoena.

      **C.**      **Resolution of Disputes**

The Parties agree to meet and confer in good faith regarding matters related to the production of data not specifically set forth in this ESI Protocol, the interpretation of this ESI Protocol, or the Parties' obligations hereunder. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing Party cannot comply with any material aspect of this ESI Protocol, such Party shall inform the receiving Party in writing at or before the time of production as to why compliance with the ESI Protocol is unreasonable or not possible. If the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this ESI Protocol or compliance with same, such disputes may be presented for judicial resolution. No Party may seek judicial relief concerning this ESI Protocol unless it first has conferred with the applicable producing or receiving Party.

      **D.**      **Modification**

This ESI Protocol may be modified by written agreement of the Parties.

**SIGNED** this 10th day of December, 2024.

                                                       LISETTE M. REID
                                      UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge K. Michael Moore**; and
        **All Counsel of Record**

## APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent-Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| ATTACHMENT COUNT | 2 (Numeric) | Identifies the number of attachments to an email (if present/applicable). |
| ATTACHMENT NAME (or Attachment Document | Document Name.xls | Identifies the file names of all attachments to an email (if present/applicable) or the Document ID Number associated with the Attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor |
| RECORDTYPE | Options: e-mail, attachment, hard-copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created |
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source |

| FILEPATH-DUP | i.e. /JSmith.pst/Inbox/Network/ TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
|---|---|---|
| AUTHOR | jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT |  | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are deduplicated on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or equivalent) |  | The MD5 Hash value or "deduplication key" assigned to a document. |
| EMAIL CONVERSATION INDEX |  | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the producing Party OCR's the |

| TIMEZONE PROCESSED | PST, CST, EST, etc. | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
|---|---|---|
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |

\*\* As it relates to the CUSTODIAN metadata field above, the producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

\*\* Same is true with all DATE and TIME Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

## Appendix 2: Load File Formats

**Image Load Files**
- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

**Metadata Load Files**
- The metadata load file must use the following delimiters: Column delimiter:
    - ASCII 020
    - Text qualifier: ASCII 254
    - New line: ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., Pacific Standard Time), and the time zone used shall be disclosed to the receiving Party.
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).