## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-20805-KMM

YA MON EXPEDITIONS, LLC, *et al.*,

      Plaintiff,

v.

INTERNATIONAL YACHT BROKER'S
ASSOCIATION, INC., *et al.*,

      Defendants.

_____/

## **<u>ORDER</u>**

THIS CAUSE came before the Court upon Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint. ("Mot.") (ECF No. 178). Plaintiffs filed a Response in opposition. ("Resp.") (ECF No. 184). Defendant filed a Reply. ("Reply") (ECF No. 192). The Motion is now ripe for review.

## I.    BACKGROUND[1]

On February 29, 2024, Plaintiff Ya Mon Expeditions, LLC ("Ya Mon") filed the instant action on behalf of itself and a class of others similarly situated. *See* (ECF No. 1). On March 28, 2024, Ya Mon filed a Motion to Consolidate Cases. *See* (ECF No. 20). On April 1, 2024, the Court granted Ya Mon's motion and consolidated three cases involving "common questions of law or fact." (ECF No. 40 at 3). On May 8, 2024, based upon a *sua sponte* review of the record, the Court consolidated an additional case involving "common questions of law or fact." *See* (ECF No. 123). Thereafter, in accordance with this Court's procedures, Plaintiffs filed a Consolidated

---

[1] The following facts are taken from the Consolidated Class Action Complaint, ("Compl.") (ECF No. 140) and are accepted as true for purposes of ruling on the Motion to Dismiss. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022).

Class Action Complaint (the "Complaint") asserting two causes of action pursuant to 15 U.S.C. §
1 ("Section One"), conspiracy to fix commissions ("Count I") and concerted refusal to deal
("Count II"). Compl. ¶¶ 197–213. Plaintiffs also request declaratory, injunctive, and equitable
relief pursuant to 15 U.S.C. §§ 1, 16 (Count III). *Id.* ¶¶ 214–217. Plaintiffs are used boat sellers
who listed a vessel for sale "on any [of] Defendants' multiple listing services ("MLS") and who
paid a broker commission . . . from February 29, 2020, to the present." *Id.* at 1. "Defendants are
boating brokerages, yacht broker associations, and MLS that reside or have a significant presence
in this District and nationwide." *Id.* ¶ 2. Plaintiffs allege:

> When pre-owned boats and yachts are sold, the aggregate broker commission on
> the sale is frequently 10% of the sales price – called "the norm" internally within
> the yacht broker community – and is paid by the seller at the time of the closing. If
> the buyer is represented by a broker, the commission is shared by the seller's broker
> and the buyer's broker, typically on a 60/40 or 50/50 split. The brokers' collective
> commissions are paid by the seller. Only boat brokers can list boats and yachts for
> sale on Defendants' MLS. Those MLS will not accept listings from boat owners
> who want to sell their vessels themselves, known as For Sale by Owner ("FSBO")
> sales. Most larger boats and yachts sold on the MLS are subject to standard listing
> agreements (e.g., a "Central Listing Agreement"), whereby the prospective seller
> of a yacht grants a particular broker the exclusive right to sell the yacht. As a result,
> Defendants and their co-conspirators together control the market for the purchase
> and sale of pre-owned boats and yachts because it is virtually impossible to sell a
> pre-owned boat or yacht without using the services of Defendants and their co-
> conspirators. This control of the market gives Defendants and their co-conspirators
> unchecked power to insist upon boat and yacht sellers paying inflated brokerage
> costs that are higher than they would otherwise be in a competitive market.

*Id.* ¶ 5–10. Now before the Court is Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated
Class Action Complaint. *See generally* Mot. Defendants argue dismissal is appropriate because
Plaintiffs failed to plausibly allege an agreement or conspiracy regarding Counts I and II. *Id.*

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for
failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a
motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted). The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.   DISCUSSION

"Section 1 of the Sherman Antitrust Act declares illegal '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations.'" *Am. Contractors Supply, LLC v. HD Supply Constr. Supply*, *Ltd*., 989 F.3d 1224, 1232 (11th Cir. 2021) (quoting 15 U.S.C. § 1). "The terms contract, combination, and conspiracy are used interchangeably to capture the concept of concerted action, that is an agreement." *Am. Contractors Supply*, 989 F.3d at 1232 (quoting *Tidmore Oil Co. v. BP Oil Co.*, 932 F.2d 1384, 1388 (11th Cir. 1991)) (cleaned up). "And in interpreting § 1, 'the Supreme Court has long concluded that Congress intended only to prohibit unreasonable restraints on trade.'" *Am. Contractors Supply*, 989 F.3d at 1232 (quoting *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019)) (collecting cases). Accordingly, Section

One "prohibits (1) conspiracies that (2) unreasonably (3) restrain interstate or foreign trade." *Id.* (internal quotations omitted).

In considering Section One cases, the "first inquiry . . . is to locate the agreement that restrains trade." *Am. Contractors Supply*, 989 F.3d at 1232 (*Tidmore*, 932 F.2d at 1388). Importantly, in Section One cases there is a distinction drawn between "concerted and independent action," as Section 1 "does not reach conduct that is wholly unilateral." *OJ Com., LLC v. KidKraft, Inc.*, 34 F.4th 1232, 1241 (11th Cir. 2022) (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767 (1984)).  In considering whether a complaint sufficiently alleges an agreement, "a court must determine 'whether there is a contract, combination, or conspiracy amongst separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decision making[.]" *OJ Com.*, 34 F.4th at 1241 (11th Cir. 2022) (quoting *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196 (2010)).  Moreover, "'the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express.'" *Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1261 (quoting *Twombly*, 550 U.S. at 554).

## A.      Direct Evidence of Agreement

Count I alleges that Defendants conspired to artificially inflate broker commissions at the expense of used yacht sellers in violation of Section One.  Compl. ¶ 199.  In their Motion, Defendants argue that the Complaint does not contain factual allegations sufficient to infer direct evidence of an agreement.  Mot. at 9.  In response, Plaintiffs argue that they alleged direct evidence of conspiracy by pleading that "Defendants impose a nationwide, uniform system of anticompetitive conduct, including the use of uniform contract terms to require sellers of used yachts to pay inflated commissions and the commission fees for buyers' brokers."  Resp. at 9

(citing Compl. ¶¶ 131-159).   In reply, Defendants argue that "Plaintiffs have made no non-conclusory allegations that *any* of the Defendants have forced sellers to pay buyer brokers' commissions or fixed commission rates."  Reply at 4–5 (emphasis included in original).

Considering the allegations set forth in the Complaint, the Court does not find Plaintiffs have plausibly alleged direct evidence of an agreement or conspiracy.  Paragraphs 131–159 of the Complaint, which Plaintiffs argue contain factual allegations of an agreement, merely alleges that some Defendants have personal and professional connections to various yacht broker associations, along with conclusory allegations, such as:

> 148.  Executives with Broker Defendants and the yacht broker co-conspirators hold key positions with Yacht Broker Association Defendants; they have furthered the conspiracy by helping IYBA and YBAA to promulgate and enforce anticompetitive rules, including that sellers pay buyers' commissions, including by requiring their members to comply with such rules.

> 155.  Broker Defendants also help maintain the rule that sellers pay buyers' commissions by promoting the claim that brokerage services are free to buyers, thereby undercutting any movement to have buyers negotiate fees with their brokers.

Compl. ¶ ¶ 148, 155.  While the Complaint alleges that yacht associations "promulgate" and "enforce" anticompetitive rules, Plaintiffs simply point to various non-binding industry practices and norms in concluding that Defendants "require yacht sellers to pay artificially inflated broker commissions and eliminate competition."  *Id.*  ¶ 199; *id.*  ¶ 85 ("YBAA **strongly recommends** . . .") (emphasis added); *id.* ¶ 87 ("Central Listings and shared Open Listings are **generally** shared on a commission basis*. . .")* (emphasis added); *id.* ¶ 90 ("All shared commission agreements **should** be negotiated prior to the submission of any Offer to Purchase.") (emphasis added); *id.* ¶ 96 ("Member **should** cooperate with other Brokers on vessels listed with him **whenever it is in the best interest of the client**.") (emphasis added).  While Plaintiff correctly states that "adoption of a binding association rule designed to prevent competition is direct evidence of concerted

action," the Complaint does not allege that a **binding** association rule exists.  *See* Reply at 9 (citations omitted).  Moreover, the Complaint does not focus its allegations to a sole entity or governing institution but alleges that the entire yacht industry is engaged in illegal, anticompetitive conduct.  *See generally* Compl.  Consequently, the Court finds the Complaint does allege direct evidence of an agreement; this Court will now consider whether the Complaint contains sufficient circumstantial evidence of an agreement.

### B.       Circumstantial Evidence of Agreement

Plaintiffs allege that several yacht brokers associations, including the International Yacht Brokers Association, California Yacht Brokers Association, and Yacht Brokers Association of America, have similar guidelines governing brokers fees for yacht sales.  *See* Compl. ¶¶ 68–105; *see also* Resp. at 9 ("Defendants impose a nationwide, uniform system of anticompetitive conduct, including the use of uniform contract terms to require sellers of used yachts to pay inflated commissions").  Defendants argue that the allegations set forth in the Complaint do not sufficiently support its conclusion that Defendants "require all sellers to pay 10% or any particular commission on the sale of yacht" or that Defendants uniformly require listing contracts contain "a co-broker agreement with split commissions."   Moreover, Defendants state:

> Plaintiffs allege only that (1) IYBA provides a form contract that contemplates the possibility of commission-sharing, *id.* ¶ 92; (2) CYBA's code of ethics contemplates that commission percentages and shares "should" be designated, *id.* ¶ 96; (3) YBAA has created a form contract that provides for commission sharing, *id.* ¶¶ 77-78; (4) YBAA's code of ethics contemplates that commissions will "generally" be shared based on negotiations on a particular sale, *id.* ¶ 87; and (5) IYBA, CYBA, and NYBA have guidelines that contemplate that any (non-mandatory) shared commission agreements be negotiated prior to submission of an offer, *id.* ¶¶ 90, 93, 96, 101.

Reply at 14 (citing Compl. ¶ 87–101).  Furthermore, Defendants contend that providing form contracts "does not support the inference that any relevant terms are required, nor do Plaintiffs allege that any rule requires the use of any form contract."  *Id.*

Allegations of "parallel business behavior," whether conscious or unconscious, are insufficient to state a claim under Section One absent certain "plus factors". *Twombly*, 550 U.S. at 557 (quotations omitted) ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief.")   Likewise, "evidence of conscious parallelism alone does not permit an inference of conspiracy unless the plaintiff either establishes that, assuming there is no conspiracy, each defendant engaging in the parallel action acted contrary to its economic self-interest or offers other 'plus factors' tending to establish that the defendants were . . . in a collusive agreement to fix prices or otherwise restrain trade." *Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1261 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 571 (11th Cir. 1998)).   Relying on "common, obvious, and mainstream" practices do not give rise to an inference of conspiracy where the "purported 'highly uniform' tactics are easily explained[.]" *Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1261–67 (citations omitted).   In the instant case, Plaintiffs argue that they have sufficiently pled evidence of parallel conduct by establishing that Defendants provide similar guidelines and form contracts, and that the Complaint sufficiently alleges "plus factors" sufficient to plausibly allege an agreement under Section One.   Resp. at 12.

First, Plaintiff argues that "the structure of the yacht-broker industry itself provides evidence of collusion."   *Id.*   Plaintiffs further state that the alleged illegal practices are standard across the yacht industry and evidenced through the "uniform codes of conduct" of various trade associations.   Resp. at 16.   In reply, Defendants argue that even if "participation in a trade association can be a plus factor," Plaintiffs bring claims against four independent trade associations.   Reply at 14.   In addition, Plaintiffs fail to address Defendants' assertion that the

Complaint lacks factual allegations to support the conclusion that Defendants have imposed uniform codes of conduct, requiring "yacht sellers to pay buyers' broker commissions" at a fixed rate of 10% of the sales price.  *Id.* at 8 (citing Resp.)

As discussed above, in attempting to allege an agreement, the Complaint points to suggestions, general practices, and industry "norms" to satisfy the conspiracy element of Section One claims.  *See generally* Compl.; *see also Quality Auto Painting Ctr. of Roselle*, 917 F.3d 1249, 1267 (11th Cir. 2019) (quoting *Twombly*, 550 U.S. at 556) ("Even if there were considerable uniformity with respect to the Insurance Companies' use of such methods, that would be suggestive of an agreement only if such usage would not plausibly arise from 'independent responses to common stimuli.'")  Notably, however, "antitrust laws allow trade associations to make nonbinding recommendations about businesses and products."  *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 832 F.3d 1, 9 (1st Cir. 2016) (citing *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 292 (5th Cir. 1988)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 227) ("As for Plaintiffs' allegation that a conspiracy may be inferred from Defendants' participation in trade associations and other professional groups, it was well-settled before *Twombly* that participation in trade organizations provides no indication of conspiracy.").  Accordingly, this Court cannot infer an illegal agreement from Defendants' mere participation in trade associations that contain similar, non-binding recommendations regarding brokers' commission fees.

Second, Plaintiff analogizes their claims to those alleged in *Moehrl v. National Association of Realtors* where Judge Wood, who sits in the Northern District of Illinois, found that real estate sellers adequately plead conspiracy against corporate defendants in a case against the National Association of Realtors ("NAR") and various corporate defendants.  Resp. at 12 (citing *Moehrl v.*

*Nat'l Ass'n of Realtors*, 492 F. Supp. 3d 768 (N.D. Ill. 2020)).  In *Moehrl*, however, the NAR conceded that Plaintiffs sufficiently plead the conspiracy element; thus, the Court merely considered whether plaintiffs sufficiently alleged that the corporate defendants joined the conspiracy.  *Moehrl*, 492 F. Supp. 3d at 777.  Notwithstanding the NAR's concession, Plaintiffs argue that the "only differences" between the "real estate industry and pre-owned yacht industry" is the standard commission rate and that "yacht brokers own only one MLS while the remainder are independently owned."  Resp. at 16 (cleaned up).  Defendants argue, however, that *Moehrl* is distinguishable from the instant case because *Moehrl* involved an organization with "centralize[d] control over how real estate brokers" were compensated.  Reply at 2.  Defendants additionally argue that "pleading an 'agreement' in *Moehrl* was straightforward because there was only one centralized trade association, the NAR, which governed every MLS with the same set of rules that were enforced by the local associations, and access to the MLS (to post or search listings) was limited to NAR members."  Reply at 3 (cleaned up).

In *Moehrl* the Court noted that the NAR's rules "require any broker listing a property for sale on an MLS to make a blanket unilateral offer of compensation to any broker who finds a buyer for the home."  492 F. Supp. 3d at 768.  The Court noted that the "blanket offer of some compensation to the buyer-broker" irrespective of the broker's "experience or the value [they] provided" was particularly concerning.  *Id.* at 784 (citing *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 348 (1982)).  Here, the Complaint is not brought against a centralized trade association and does not involve a "blanket unilateral offer of compensation" without regard for the value of services provided.  *See generally* Compl.; *see also Moehrl*, 492 F. Supp. 3d at 774 ("Because Section 2-G-1 requires a blanket offer, home sellers must provide the listed offer of compensation without regard to the buyer-broker's experience or the value of services the buyer-broker provides

9

to the buyer client."). Here, Plaintiffs cite to industry standards and non-binding suggestions. Reply at 2; *see also* Compl. ¶ 76 ("A **form contract** . . . illustrates the **standard form** used in listing transactions . . . [and] provides the boat owner will pay a commission set as a percentage of the selling price.") (emphasis added). Relatedly, nothing in the Complaint "tends to exclude the possibility of independent action." *Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1267 (quoting *Twombly*, 550 U.S. at 553-54) (affirming dismissal of claims where "independent action [was] at least as plausible as concerted action pursuant to prior agreement"). Accordingly, this Court finds dismissal of Count I of the Complaint warranted.

### C.    Concerted Refusal to Deal

In considering concerted refusal to deal claims, "the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1265 (11th Cir. 2015) (citing *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004)). Moreover, the "mere allegation of a concerted refusal to deal does not suffice because not all concerted refusals to deal are predominantly anticompetitive." *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 298 (1985). Nevertheless, when a "party goes beyond a unilateral choice and agrees with other parties to deal or not to deal with some specific party," there may be an actionable "concerted refusal to deal" claim under Section One. *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567–68 (11th Cir. 1991) (quoting *Construction Aggregate Transp., Inc. v. Florida Rock Indus., Inc.*, 710 F.2d 752, 772–73 (11th Cir.1983)) (cleaned up). "Concerted refusals to deal that have been treated as per se illegal are generally termed 'group boycotts'; this designation describes a situation where two or more parties have

agreed that each of them will 'refuse to deal with a particular customer or customers.'" *Id.* When concerted refusal to deal allegations do not amount to a group boycott, courts analyze the claims under "the rule of reason standard" which "weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (quoting *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)). Accordingly, in applying the rule of reason standard, courts must conduct a case-by-case analysis. *Id.*

Count II alleges that Defendants conspired to refuse "to deal with sellers who are not represented by a licensed broker by refusing to accept [for sale by owner] listings." Compl. ¶ 208. Defendants argue that Plaintiffs have failed to sufficiently allege an agreement regarding their concerted refusal to deal claim. Mot. at 34. In response, Plaintiff argues that the "Broker Defendants, when acting in the capacity of seller's broker, have agreed amongst themselves to refuse to deal with unrepresented yacht buyers." Resp. at 36. As noted above, the Complaint does not provide sufficient evidence of a conspiracy or agreement among Defendants. The Complaint merely states, in conclusory language, that an agreement exists. In addition, Plaintiffs do not allege that an individual, entity, or group of individuals have been targeted, but rather that Defendants refused to deal with a *class* of individuals, specifically unrepresented used yacht sellers. Compl ¶ 209. Plaintiffs' allegations do not amount to a "group boycott" of a "particular customer or customers," as no individual is being specifically targeted, and are therefore not *per se* illegal. *Seagood Trading Corp.*, 924 F.2d at 1567–68 (quoting *Construction Aggregate Transp.*, 710 F.2d at 772–73). In considering the allegations set forth in the Complaint, the Court cannot conclude that Defendants' actions amounted to anything more than their unilateral and reasonable decision to conduct business with licensed professionals, rather than individuals who may be unexperienced

or unfamiliar with the process of selling a used yacht. *See Quality Auto Painting Ctr. of Roselle*, 917 F.3d at 1267 (quoting *Twombly*, 550 U.S. at 553-54). Accordingly, this Court finds dismissal of Count II of the Complaint warranted.

      **D.    Count III: Declaratory and Injunctive Relief**

      Finally, Plaintiffs seek "declaratory judgment that Defendants' conduct constitutes a violation of Section [One]." Compl. ¶ 216. Plaintiffs further request "equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26." *Id.* ¶ 217. As this Court had found dismissal of Counts I and II of the Complaint warranted, Plaintiff is not currently entitled to declaratory, injunctive, or equitable relief. Accordingly, dismissal of Count III is warranted.[2]

**IV.    CONCLUSION**

      UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (ECF No. 178) is GRANTED. Plaintiffs' Complaint (ECF No. 140) is DISMISSED WITHOUT PREJUDICE. Should Plaintiffs choose to file a second amended complaint, they may do so within twenty-one (21) days of the date of this Order. The Clerk of Court is INSTRUCTED to administratively CLOSE THIS CASE. All pending motions, if any, are DENIED AS MOOT.

      DONE AND ORDERED in Chambers at Miami, Florida this <u>20th</u> day of January 2025.

                                     *K. M. Moore*
                                K. MICHAEL MOORE
                                UNITED STATES DISTRICT JUDGE

c:  All counsel of record

---

[2]  As this Court finds dismissal appropriate in consideration of Defendants' Joint Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint, it need not address the arguments raised in Defendant California Brokers Association's Motion to Dismiss (ECF No. 173).